ELLEN KAUFMAN WOLF (Cal. Bar No. 110686)
ewolf@wolfwallenstein.com
EVAN W. GRANT (Cal. Bar No. 234039)
egrant@wolfwallenstein.com
**WOLF WALLENSTEIN, PC**
11400 West Olympic Boulevard, Suite 700
Los Angeles, California 90064
Telephone: (310) 622-1000
Facsimile: (310) 457-9087

Attorneys for Defendant Community Brigade

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES EMERGENCY PREPAREDNESS FOUNDATION dba COMMUNITY BRIGADE, a California nonprofit corporation,<br><br>Plaintiff,<br><br>v.<br><br>MIKKE PIERSON, an individual; JASON DAX MILLER aka DAX MILLER, an individual; DANA WOLF PHILLIPS, an individual; KEEGAN GIBBS, an individual; TYLER HAUPTMAN, an individual; COMMUNITY BRIGADE, a California nonprofit corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:26-cv-02463-GW (DFMx)<br><br>**DEFENDANT COMMUNITY BRIGADE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**<br><br>Hon. George H. Wu<br><br>Date: June 18, 2026<br>Time: 8:30 a.m.<br>Courtroom: 9D<br><br>Complaint Filed: March 6, 2026<br>Trial Date: None Set<br>L.R. 7-3 Conference: April 23, 2026 |

## TABLE OF CONTENTS

I. INTRODUCTION .......... 5
II. THE TRADEMARK CLAIMS FAIL ON PLAINTIFF'S OWN PLEADED FACTS .......... 7
III. THE GROUP-PLEADING AND PRE-INCORPORATION DEFECTS REMAIN .......... 11
IV. THE CONVERSION CLAIM FAILS AS A MATTER OF LAW .......... 12
V. THE PENAL CODE CLAIMS FAIL .......... 14
VI. THE UCL AND DECLARATORY-RELIEF CLAIMS ARE DERIVATIVE AND DUPLICATIVE .......... 14
VII. THE RESTITUTION AND PUNITIVE-DAMAGES PRAYERS FAIL .......... 15
VIII. NO LEAVE TO AMEND .......... 15
IX. CONCLUSION .......... 16

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 11

*Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*,
688 F. Supp. 2d 940 (N.D. Cal. 2010) .......... 13

*Borgman v. Uga-Ass'n Field Servs.*,
No. G060399, 2021 Cal. App. Unpub. LEXIS 6582 (Cal. Ct. App. Oct. 19, 2021) .......... 13

*Brillhart v. Excess Ins. Co. of Am.*,
316 U.S. 491 (1942) .......... 14

*Cal. Cooler, Inc. v. Loretto Winery, Ltd.*,
774 F.2d 1451 (9th Cir. 1985) .......... 8

*Destfino v. Reiswig*,
630 F.3d 952 (9th Cir. 2011) .......... 12

*Fernandez v. Am. Nat'l Lloyds Ins. Co.*,
No. 5:25-cv-01517, 2025 U.S. Dist. LEXIS 182839 (C.D. Cal. Sept. 16, 2025) .......... 15

*Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*,
198 F.3d 1143 (9th Cir. 1999) .......... 5

*Gordon v. Safeco Ins. Co. of Am.*,
No. 2:12-cv-06318-SVW-MAN, 2012 U.S. Dist. LEXIS 209529 (C.D. Cal. Aug. 29, 2012) .......... 15

*G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.*,
958 F.2d 896 (9th Cir. 1992) .......... 12

*In re Read-Rite Corp.*,
335 F.3d 843 (9th Cir. 2003) .......... 16

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) .......... 15

*Kremen v. Cohen*,
337 F.3d 1024 (9th Cir. 2003) .......... 12

*Lacey v. Maricopa Cnty.*,
693 F.3d 896 (9th Cir. 2012) .......... 11

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) .......... 7

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) .......... 16

*Pinterest Inc. v. Pintrips Inc.*,
15 F. Supp. 3d 992 (N.D. Cal. 2014) .......... 8

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) .......... 16

*Sam Bernstein Law Firm, PLLC v. Heidari Law Group, PC*,
No. 2:24-cv-10251, 2025 U.S. Dist. LEXIS 85591 (C.D. Cal. Feb. 10, 2025) 8

*Siry Inv., L.P. v. Farkhondehpour*,
13 Cal. 5th 333 (2022) .......... 14

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .......... 12

*Threshold Enters. Ltd. v. Pressed Juicery, Inc.*,
445 F. Supp. 3d 139 (N.D. Cal. 2020) .......... 9

*Voris v. Lampert*,
7 Cal. 5th 1141 (2019) .......... 13

*Welco Elecs., Inc. v. Mora*,
223 Cal. App. 4th 202 (2014) .......... 12

*Zero Motorcycles, Inc. v. Zero Labs Grp., LLC*,
No. 22-CV-04034-SVK, 2023 U.S. Dist. LEXIS 77342 (N.D. Cal. May 3, 2023) .......... 9

**Statutes, Rules, and Other Authorities**

15 U.S.C. § 1091 .......... 8

15 U.S.C. § 1094 .......... 8

Cal. Bus. & Prof. Code § 17200 .......... 14

Cal. Civ. Code § 3294(b) .......... 15

Cal. Penal Code § 496 .......... 12

Cal. Penal Code § 502 .......... 14

Cal. R. Ct. 8.1115(a) .......... 13

Fed. R. Civ. P. 8(a)(2) .......... 12

Fed. R. Civ. P. 9(b) .......... 12

Fed. R. Evid. 201(b)(2) .......... 7

L.R. 11-6.1 .......... 17

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition hands the Court the right analogy and then reverses it. Plaintiff likens itself to the Red Cross and casts Defendant as an "imposter" trading on the Red Cross's name. But Plaintiff is not the Red Cross, and "Community Brigade" is not "Red Cross." "Red Cross" identifies a single source—it answers the question "who are you?" "Community Brigade" answers a different question—"what are you?"—because it names the very category of thing Plaintiff is: a brigade of community volunteers. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). And the words were in public use first—as a generic term used by the local newspaper to describe a prior local community volunteer fire response team—the Point Dume Bombers—a group Plaintiff acknowledges predated it. (RJN 11, pp. 105–134.) Five months before Plaintiff's claimed date of first use, *The Malibu Times* captioned that group "The Point Dume Community Brigade 2019," as shown here.


**New podcast tells the riveting story of the Point Dume Bombers**

By Judy Abel (/author/Judy-Abel) · May 21, 2023

The Point Dume Community Brigade 2019. Photo by Robert Spangle.

(RJN 7–9, pp. 90–100; RJN 16, p. 165.) That article also pictures—and names—two of the individual defendants here, Tyler Hauptman (RJN 16, p. 165) and Keegan Gibbs

(RJN 16, pp. 165–166). The paper was not naming a brand; it was describing what that group was. Plaintiff's position reduces to this: the very people who, by Plaintiff's own pleading, "volunteered for and were involved in" this community work (FAC ¶ 2) may not call their group the same thing *The Malibu Times* called the Point Dume Bombers. Plaintiff's own caption makes the point: it sues as the "LOS ANGELES EMERGENCY PREPAREDNESS FOUNDATION dba COMMUNITY BRIGADE." That is the Red Cross suing as the "American Red Cross dba Charitable Organization"—and then demanding exclusive ownership of the words "Charitable Organization." That suit would be dismissed on the pleadings—with prejudice and without leave to amend—because no entity may fence off the generic name of the category in which it operates, no matter how much goodwill it had alleged it earned. Plaintiff's First Amended Complaint should meet the same fate.

In fact, the irony runs deeper. The Red Cross is itself among the disaster-response organizations that use "community brigade" to describe their local volunteer emergency-response teams, as shown here. If Plaintiff's claims may proceed against Defendant for using those words, they could proceed with equal force against the Red Cross—the very organization to which Plaintiff compares itself.




*International Federation of Red Cross and Red Crescent Societies / Global Disaster Preparedness Center, "Community Brigades" Solutions Brief (Aug. 2023). RJN Ex. 17, p. 169; see also RJN Ex. 18, pp. 174–188 (Mexican Red Cross).*

A name that the Red Cross and humanitarian groups worldwide use to denote a category of volunteer response is generic by definition.

The remainder of the Opposition confirms it. Plaintiff's Opposition concedes far more than it contests. It concedes that its statutory unfair-competition claim is wholly "derivative" of its other claims. It concedes it is only "willing to amend" to try to allege secondary meaning. Each concession confirms what the Motion demonstrated: the First Amended Complaint is Plaintiff's best effort, and it still does not state a claim.

The Motion should be granted in its entirety, with prejudice and without leave to amend.

## II. THE TRADEMARK CLAIMS FAIL ON PLAINTIFF'S OWN PLEADED FACTS

Plaintiff's recurring refrain—that the Motion is "a motion for summary judgment cloaked as a responsive pleading" resting on "unauthenticated documents"—is wrong as a matter of law. A Rule 12(b)(6) motion may rest on the complaint's allegations, documents incorporated into it, and judicially noticeable matters, and considering those materials does not convert the motion into one for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Motion relies on precisely those materials—Plaintiff's own pleaded facts and the USPTO's official records—not on extrinsic evidence the Court must weigh. Nothing requires authentication, and nothing requires a single factual finding: the dispositive points appear on the face of the FAC and in public records whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). Labeling a pleadings motion "summary judgment" does not make it one.

Nor does the Motion ask the Court to resolve a contested fact. It takes Plaintiff's own pleaded facts as true and shows that they establish, as a matter of law, that the asserted mark is not protectable.

Plaintiff pleads that its "Community Brigade" registrations issued on the Supplemental Register. (FAC ¶ 37.) That pleaded fact is dispositive. A mark reaches the Supplemental Register only because it is, at most, "capable of distinguishing"—the

bare statutory threshold of 15 U.S.C. § 1091—not because it is distinctive or valid. Supplemental registration confers none of the Lanham Act presumptions that attach to the Principal Register. (15 U.S.C. § 1094.) Plaintiff's own authority proves the point: *Sam Bernstein Law Firm, PLLC v. Heidari Law Group, PC* explains that the "strong presumption of validity," "includ[ing] the specific presumption that the trademark is not generic," flows from federal (Principal Register) registration. Plaintiff has no such registration, and therefore no such presumption.

Plaintiff's own cases supply the rule that defeats it. *Pinterest* and *Sam Bernstein* hold that, while genericness is often premature on a motion to dismiss, dismissal is proper where the complaint "suffers from a complete failure to state a plausible basis for trademark protection." *Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 998–99 (N.D. Cal. 2014). A Supplemental-Register-only term—for which the USPTO required Plaintiff to disclaim the word "BRIGADE"—is that case. *California Cooler*, also cited by Plaintiff, confirms both the threshold and the bar: Supplemental Register registration means only that the mark is "capable of distinguishing," and a generic term remains unprotectable no matter what showing of secondary meaning is made. *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir. 1985).

The Request for Judicial Notice is proper as to the specific items the Motion relies upon. On a Rule 12(b)(6) motion, the Court may consider "matters of judicial notice without converting the motion to one for summary judgment," and may "consider documents referenced in a complaint and matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 153–54 (N.D. Cal. 2020).

First, the USPTO records—the Office Actions, registration certificates, TSDR status reports, and the TTABVUE cancellation docket (RJN 1–10, pp. 18–103; RJN 28–30, pp. 266–425)—are official records of a federal agency whose existence and content "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Defendant offers them for what

they indisputably are—the agency's official actions and Plaintiff's resulting register status—not to resolve genericness as a contested fact. That the USPTO refused Principal Register registration, found "BRIGADE" "appears to be generic," required disclaimers, and registered the mark only on the Supplemental Register are facts of record, not disputed merits findings.

Second, the Supplemental Register status (RJN 4–6, pp. 81–88) requires no judicial notice at all, because Plaintiff pleads it. (FAC ¶ 37.) Its legal consequence—that the registration carries no presumption of validity or distinctiveness—is a question of law the Court decides on the pleadings.

Third, Plaintiff's own website pages (RJN 11–12, pp. 105–146) are Plaintiff's public statements, and they are referenced in and integral to the FAC's allegations about its "Community Brigade" program; they are properly considered as Plaintiff's admissions and as incorporated material. *Threshold Enters.*, 445 F. Supp. 3d at 153–54.

*Pinterest* and *Zero Motorcycles* are not to the contrary. Each refused to notice miscellaneous third-party webpages "whose source and reliability are unknown," offered to prove the ultimate fact of genericness. Defendant relies on the opposite—the USPTO's own records and Plaintiff's own pleaded registration and statements. In all events, the Motion does not turn on judicial notice of any contested fact: it succeeds on the face of the FAC, which pleads a Supplemental-Register-only mark. (FAC ¶ 37.)

The USPTO's treatment of the very wording confirms the defect. Plaintiff's footnote that it "does not allege any Lanham Act claims as to the logo" (Opp. 16 n.1) misses the point: the logo applications matter not as a pleaded claim, but because of what the trademark office has said about the words "Community Brigade." On May 4, 2026—in the midst of this litigation—the USPTO issued Office Actions on Plaintiff's three pending logo applications, each requiring Plaintiff to disclaim the entire wording "L.A. COUNTY FIRE DEPT. COMMUNITY BRIGADE" as "merely descriptive." (RJN 28–30, pp. 266–425.) That followed the USPTO's earlier determination that "BRIGADE" "appears to be generic" and its requirement—which Plaintiff accepted—

that Plaintiff disclaim "BRIGADE" in the word-mark registrations. (RJN 1–3, pp. 18–79; RJN 6, pp. 87–88.) Across both the word mark and the logo applications, the trademark office has refused to let Plaintiff claim "Community Brigade" as a source identifier. A term that the USPTO itself will not allow Plaintiff to own—even as one component of a composite logo—cannot be the protectable mark on which Counts One through Three depend.

The examining attorney's own analysis is decisive. The USPTO did not stop at the label "descriptive"; it dissected the phrase, defined each word, and concluded that the combination "merely describes a feature or purpose of applicant's services":

> **<u>Disclaimer of Descriptive Term and Geographically Descriptive Wording Required</u>**
>
> Applicant must disclaim the wording "L.A. COUNTY FIRE DEPT. COMMUNITY BRIGADE" because it is merely descriptive and primarily geographically descriptive of applicant's goods and/or services. *See* 15 U.S.C. §1056(a).

> The wording "FIRE DEPT. COMMUNITY BRIGADE" merely describes an ingredient, quality, characteristic, function, feature, purpose, or use of applicant's goods and/or services. *See* 15 U.S.C. §1052(e)(1); *DuoProSS Meditech Corp. v. Inviro Med. Devices, Ltd.*, 695 F.3d 1247, 1251, 103 USPQ2d 1753, 1755 (Fed. Cir. 2012). FIRE DEPT. is an abbreviation of "fire department," which is an organization intended to prevent or extinguish fires. *See attached evidence from Merriam-Webster Dictionary*. This wording merely describes a feature of applicant's entity. COMMUNITY is defined as a body of people with common interests or geographic area, while BRIGADE is defined as a group of people organized for a particular purpose. *See attached evidence from Merriam-Webster Dictionary*. The combination of terms merely describes a feature or purpose of applicant's services, as indicated by the specimen, which is to create a group of people in local communities to provide volunteer fire fighting services.

*USPTO Nonfinal Office Action, U.S. Trademark App. Serial No. 99558495 (L.A. COUNTY FIRE DEPT. COMMUNITY BRIGADE & design), issued May 4, 2026. RJN Ex. 28, p. 267.*

That is the hallmark of a generic designation under the Ninth Circuit's test: a mark that answers only "what are you"—a community brigade that provides volunteer firefighting services—names the genus and is no source identifier. *Filipino Yellow Pages*, 198 F.3d at 1147. Taken together with the USPTO's separate determination that "BRIGADE" "appears to be generic," and the third-party generic use shown above (including by the Red Cross itself), Plaintiff's own pleaded facts and the face of the USPTO record establish that "Community Brigade" is generic—and, at the very least, descriptive with no adequately pleaded secondary meaning—and therefore unprotectable as a matter of law.

## III. THE GROUP-PLEADING AND PRE-INCORPORATION DEFECTS REMAIN

Plaintiff's response confirms the defect. Plaintiff concedes that the Community Brigade entity was incorporated after most of the alleged conduct. (FAC ¶¶ 6, 19.) It then pivots to labels—"conspiracy" and "agency" (FAC ¶¶ 5, 95, 98)—to attach pre-incorporation conduct to an entity that did not yet exist. A corporation cannot conspire, or act through agents, before it exists. And the label itself is not enough. In *Iqbal*, the Supreme Court held that allegations that officials "knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to unlawful treatment were "bare assertions" that, "much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements'"—"conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009). The en banc Ninth Circuit enforces the same rule: "conclusory conspiracy allegations" are insufficient where they "do not define the scope of any conspiracy involving [the defendant], what role he had, or when or how the conspiracy operated." *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 937 (9th Cir. 2012) (en banc). Plaintiff pleads only the label: it is entitled to no presumption of truth, it pleads no facts that carry its conspiracy theory "across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 680, and a label cannot manufacture the entity's own conduct where the pleading shows it had none.

*Robles* and *Lattimore* do not help Plaintiff. The pleading standard is the same in every civil action—*Iqbal* itself was a civil-rights suit—and on their own terms those out-of-circuit district decisions tolerate collective references only where the complaint "provides sufficient detail to put the defendants on notice of the claims" against each defendant. An undifferentiated mass of "Defendants" allegations—much of it describing conduct that predates this entity's existence—gives the entity notice of nothing, and it fails Rule 8 at the threshold: conclusory allegations are not entitled to the presumption of truth, and each defendant's liability must be discernible from well-pleaded facts. Fed. R. Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 678. The fraud-premised

theories fare worse still. The donation-diversion conversion theory, the § 496 claim, and the UCL claim all rest on the premise that donors were misled, so each must also satisfy Rule 9(b)—and Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011); *accord Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). The FAC does neither.

## IV. THE CONVERSION CLAIM FAILS AS A MATTER OF LAW

Goodwill is not subject to conversion, and Plaintiff's authorities do not say otherwise. Plaintiff cites *Rasmussen* for the proposition that "California law recognizes goodwill as property." It does not. *Rasmussen* concerns an FAA Supplemental Type Certificate—an aircraft-modification permit that the defendant pirated—and holds only that the certificate was property under California's three-part test. *G.S. Rasmussen & Assocs. v. Kalitta Flying Serv.*, 958 F.2d 896, 902 (9th Cir. 1992). Goodwill is never mentioned. *Welco* likewise does not reach goodwill: it concerns a defendant's unauthorized use of a credit-card terminal to transfer specific, identifiable sums of money, and its "every intangible benefit" language is the general formulation drawn from *Kremen v. Cohen*, applied to a credit-card account—not to goodwill. *Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 211 (2014).

Plaintiff's own lead authority defeats the theory. *Boon Rawd*—quoted in both the FAC and the Opposition—squarely "declines to extend the tort of conversion to customer goodwill." *Boon Rawd Trading Int'l Co. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 955 (N.D. Cal. 2010). That leaves Plaintiff with a single "on-point" case: *Borgman*, which Plaintiff again concedes is "unpublished." That concession is fatal, not curative. Plaintiff asks this Court to apply California law and to treat *Borgman* as persuasive on the very question California law governs—yet an unpublished California Court of Appeal opinion "must not be cited or relied on by a court or a party in any other action." Cal. R. Ct. 8.1115(a). Plaintiff thus offers, as its only direct support, a

decision that may not be cited at all in the California courts whose law controls this claim. It cannot supply the California authority that—as *Boon Rawd* itself recognized—no published decision provides. A conversion-of-goodwill theory built on a non-citable opinion and a string of cases that never mention goodwill is no claim at all.

The donation theory fails twice over. First, conversion of money requires "a specific, identifiable sum." *Voris v. Lampert*, 7 Cal. 5th 1141 (2019). Plaintiff pleads the opposite: it "is presently unable to state with specificity the amount of diverted donations," which it leaves as "an amount to be determined at trial." (FAC ¶ 104.) That admission is fatal. Second, the donations are not money Plaintiff ever owned or possessed; they are third-party funds that, the FAC alleges, "would be received by" Plaintiff only "[b]ut for Defendants['] impersonation." (FAC ¶ 105.) Money a plaintiff hoped to receive from third parties is a classic expectancy, not a possessory interest that conversion protects. Plaintiff's "imposter Red Cross" hypothetical proves the point: the donors gave to Defendants, not to Plaintiff, so nothing was taken from Plaintiff.

Plaintiff's assertion that it "is not presently advancing any fraud theories" on the conversion claim cannot be reconciled with a theory built entirely on donors being deceived "by trick" and by "false[] represent[ation]." (FAC ¶¶ 103, 105.) The theory is fraud-based, and it is not pleaded with particularity.

## V. THE PENAL CODE CLAIMS FAIL

**Section 502**. Plaintiff again relies on "conspiracy" and "agency" to supply the entity's access and conduct. For the reasons above, those labels cannot substitute for facts showing that this entity accessed Plaintiff's systems.

**Section 496**. Plaintiff's lead authority is *Siry*, and *Siry* defeats the claim. The California Supreme Court held that "not all commercial or consumer disputes alleging that a defendant obtained money or property through fraud, misrepresentation, or breach of a contractual promise will amount to a theft," and that "[t]o prove theft, a plaintiff must establish criminal intent on the part of the defendant beyond 'mere proof of nonperformance or actual falsity.'" *Siry Inv., L.P. v. Farkhondehpour*, 13 Cal. 5th 333,

361–62 (2022). That requirement exists to prevent "ordinary commercial defaults" from being recast as theft. A dispute over who owns a program name and the donations associated with it is the paradigmatic commercial dispute *Siry* excludes. Plaintiff's allegation that Defendant's "conduct, as described above, constitutes theft or larceny," and that Defendants "have always known they did not own or have an immediate right to possess" the property (FAC ¶ 111), is exactly the conclusory recital of criminal intent that *Siry* and *Iqbal* reject.

## VI. THE UCL AND DECLARATORY-RELIEF CLAIMS ARE DERIVATIVE AND DUPLICATIVE

**UCL.** Plaintiff "does not dispute" that its Section 17200 claim is "derivative of its other claims." That concession is dispositive: because the predicate claims fail, the UCL claim fails with them. The fraudulent prong independently fails Rule 9(b). And Plaintiff's own authority confirms that its common-law and statutory unfair-competition theories are "substantially congruent" to its Lanham Act claim.

Declaratory relief. Plaintiff's claim seeks a declaration of the same ownership questions presented by its trademark and conversion claims. It is therefore duplicative, and the Court should decline to entertain it. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Plaintiff's argument that it is "entitled to a declaration" even if it loses misframes the issue: the claim is redundant of Causes of Action One through Three, not independently necessary.

## VII. THE RESTITUTION AND PUNITIVE-DAMAGES PRAYERS FAIL

**Restitution.** Plaintiff accuses Defendant of "deceptively" quoting *Korea Supply*, then quotes the very sentence that defeats its claim. UCL restitution reaches only "money or property in which [the plaintiff] has a vested interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003). The next lines of that opinion hold that a mere "expectancy"—there, an anticipated commission to be paid by a third party—is not a vested interest and is not recoverable. Plaintiff's third-party donations

are the same expectancy: funds it never possessed and hoped to receive from donors. *Korea Supply* forecloses, rather than supports, restitution here.

**Punitive damages.** Section 3294(b) requires, for corporate liability, that an officer, director, or managing agent authorized or ratified the wrongful conduct, pleaded with specificity. Cal. Civ. Code § 3294(b). The FAC pleads no such facts. Plaintiff's "conclusory pleading is sufficient" authorities (*Fernandez*; *Gordon*) address the general malice standard; they do not excuse Section 3294(b)'s separate corporate-ratification requirement.

## VIII. NO LEAVE TO AMEND

Plaintiff has already amended once, after a full meet-and-confer process and the roadmap furnished by the parties' Stipulation (ECF No. 14). The FAC is its considered, second pleading. Its blanket alternative request identifies no specific new facts it could plead, and "willing to amend" on secondary meaning is not a proffer of curable facts. More fundamentally, the defects here are substantive, not formal: a Supplemental-Register-only term carries no presumption of validity; goodwill is not convertible; and Plaintiff concedes it cannot identify a converted sum. No additional allegation can change those legal conclusions. The Ninth Circuit's discretion to deny leave is "particularly broad where plaintiff has previously amended the complaint." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013); *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008); *In re Read-Rite Corp.*, 335 F.3d 843, 845 (9th Cir. 2003). Dismissal should be with prejudice.

## IX. CONCLUSION

The Opposition confirms that Plaintiff cannot cure what ails the FAC, because nearly every claim rests on the same keystone: that "Community Brigade" belongs to Plaintiff alone. If the term is generic, the trademark counts fail. And the rest crumble with them: no donor could be misled merely because a volunteer group calls itself a community brigade, so the diversion-built conversion, § 496, and UCL theories fail; there is no exclusive goodwill in a generic name to convert; and the declaratory count

only asks the same ownership question again. A generic name that the Red Cross, the IFRC, and disaster-response organizations everywhere use in common is not Plaintiff's to monopolize—and no additional pleading can make it so. For the reasons stated here and in the Motion, Defendant Community Brigade respectfully requests that the Court grant the Motion and dismiss the First Amended Complaint in its entirety, with prejudice and without leave to amend.

Dated: June 3, 2026

WOLF WALLENSTEIN, PC

By: ______________________________
Ellen Kaufman Wolf
Evan W. Grant
Attorneys for Defendant Community Brigade

# CERTIFICATE OF COMPLIANCE (L.R. 11-6.2)

The undersigned, counsel of record for Defendant Community Brigade, certifies that this brief contains 3,485 words, which complies with the word limit of L.R. 11-6.1. The undersigned relies on the word-count feature of the word-processing program used to prepare this brief.

Dated: June 3, 2026

WOLF WALLENSTEIN, PC

By: ______________________________
Ellen Kaufman Wolf
Evan W. Grant
Attorneys for Defendant Community Brigade

## CERTIFICATE OF SERVICE

*Los Angeles Emergency Preparedness Foundation v. Mikke Pierson, et al.*
USDC Case No. 2:26-cv-02463

I am employed in the State of California, County of Los Angeles, over the age of eighteen years, and not a party to the within action. My business address is 11400 West Olympic Boulevard, Suite 700, Los Angeles, California 90064.

On June 3, 2026, I served the within documents:

**DEFENDANT COMMUNITY BRIGADE'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

[ ] by placing **[ ] the original [ ] a true and correct copy** of the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Los Angeles, California, addressed as set forth below.

[ ] by causing messenger delivery by First Legal attorney service of **[ ] the original [ ] a true and correct copy** of the document(s) listed above to the person(s) at the address(es) set forth below.

[X] BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

[SEE ATTACHED SERVICE LIST]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on June 3, 2026, at Los Angeles, California.

*Nicole Carlson*

Nicole Carlson

**SERVICE LIST**

*Los Angeles Emergency Preparedness Foundation v. Mikke Pierson, et al.*
USDC Case No. 2:26-cv-02463

| | |
|---|---|
| Ali Parvaneh<br>Susanna F. Wiseman<br>Jacob A. Pace<br>MADISON LAW, APC<br>17702 Mitchell North<br>Irvine, California 92614 | *Attorneys for Plaintiff Los Angeles Emergency Preparedness Foundation dba Community Brigade*<br><br>Telephone: 949-756-9050<br>Facsimile: 949-756-9060<br><br>Email:<br>aparvaneh@madisonlawapc.com<br>swiseman@madisonlawapc.com<br>jpace@madisonlawapc.com |