UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | CV 26-2463-GW-DFMx | Date | June 23, 2026 |
| Title | *Los Angeles Emergency Preparedness Foundation v. Mikke Pierson, et al.* | | |

| | |
|---|---|
| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |

| | | |
|---|---|---|
| Javier Gonzalez | None Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| | |
|---|---|
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**PROCEEDINGS: IN CHAMBERS - TENTATIVE RULING ON DEFENDANT COMMUNITY BRIGADE'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) [18]**

Attached is the Court's Tentative Ruling on Defendant's Motion [18] set for hearing on June 25, 2026 at 8:30 a.m.

______ : ______

Initials of Preparer JG

***Los Angeles Emergency Preparedness Foundation v. Mikke Pierson et al***; Case No. 2:26-cv-02463-GW-(DFMx); Tentative Ruling on Defendant Community Brigade's Motion to Dismiss

Before the Court is Defendant Community Brigade's ("CB's") Motion to Dismiss (the "Motion"). *See* Motion, Docket No. 18. The Court has considered the Motion, Plaintiff Los Angeles Emergency Preparedness Foundation's ("LAEPF's") opposition ("Opp," Docket No. 20), and Defendant's reply ("Reply," Docket No. 21). For the reasons stated herein, the Court would **GRANT IN PART** and **DENY IN PART** the Motion.

## I. Background[1]

This action arises out of what Plaintiff LAEPF characterizes as "charity fraud." *See* First Amended Complaint ("FAC"), Docket No. 15, ¶ 4. LAEPF is a nonprofit founded in 2008 that "concentrates on preparedness and response for disasters such as wildfires, floods, and earthquakes." *Id.* ¶ 20. Since 2015, LAEPF has worked with government agencies to help coordinate civilian support and community response efforts during major public safety emergencies, such as wildfires and other mass casualty events. *Id.* ¶¶ 29-30.

In May of 2021, LAEPF established the Community Brigade, which officially organized LAEPF's civilian support program. *Id.* ¶ 31. LAEPF's Community Brigade is an "all-hazards volunteer response program" that works with the Los Angeles County Fire Department and focuses on wildfire preparedness and prevention. *Id.* ¶ 1. LAEPF asserts that its Community Brigade program is known by that name within the Los Angeles community. *Id.* ¶ 34. For example, LAEPF has held press conferences using the name, has been televised using the name, and has been featured and referenced by that name in the Los Angeles Times and other smaller community publications. *Id.* LAEPF also holds, as of March 7, 2025, a fictitious business name registration for "Community Brigade" in Los Angeles County, and as of January 20, 2026, owns the trademark, "Community Brigade." *Id.* ¶ 37.

LAEPF alleges that former participants in its Community Brigade program formed a separate California nonprofit under the same "Community Brigade" name and used it to divert LAEPF donations and other assets. *Id.* Defendant CB is the entity incorporated by the former

[1] For the purposes of this Motion, the Court accepts all well-pleaded factual allegations in the FAC as true. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 195 (2024).

participants, who are also defendants individually named in this action. LAEPF alleges that beginning in September 2025, the individually named former participants and CB took over LAEPF computer systems, copied its website and logo with minimal changes, and began soliciting donations under the name "Community Brigade." *Id.* ¶¶ 52-53. CB filed a fictitious business name registration for "Community Brigade" on February 5, 2026. *Id.* ¶ 49.

The individually named defendants are Mikke Pierson ("Pierson"), Dax Miller ("Miller"), Dana Wolf Phillips ("Phillips"), Keegan Gibbs ("Gibbs"), and Tyler Hauptman ("Hauptman"). *See* FAC. Each was a volunteer for the LAEPF Community Brigade program. *Id.* ¶ 117. Pierson is the CEO of entity defendant CB, Miller is CFO of CB, and Phillips is Secretary of CB. *Id.* ¶ 46. Gibbs and Hauptman "were administrators on various computer systems and had access to LAEPF's computer systems and the account credentials for LAEPF's accounts." *Id.* ¶ 94. Gibbs was also hired as a contractor for LAEPF, in part, to create LAEPF's logo. *Id.* ¶ 116. Gibbs allegedly then used his inside information about LAEPF to "play[] an integral role in the operational formation of [CB]." *Id.* ¶ 116.

On March 6, 2026, LAEPF filed this against Defendants CB, the above five named individuals, and Does 1-50, inclusive, asserting nine causes of action: (1) trademark infringement under 15 U.S.C. § 1114; (2) false advertising under 15 U.S.C. 1125(a); (3) common law trademark infringement; (4) civil computer crimes under Cal. Penal Code § 502; (5) conversion; (6) civil theft under Cal. Penal Code § 496; (7) breach of contract; (8) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; and (9) declaratory relief. *See generally* Docket No. 1. On May 14, 2026, LAEPF filed the operative FAC, which asserts the same nine claims. *See* FAC. LAEPF names CB as a defendant on all claims except for Count 7 for breach of contract. *Id.*

CB filed this Motion on May 21, 2026, seeking the dismissal of LAEPF's claims under Federal Rules of Civil Procedure 12(b)(6) and, concurrently, to judicially notice several exhibits. CB argues in the Motion that LAEPF's trademark claims should be dismissed because "Community Brigade" is generic and cannot function as a trademark. *See* Motion at 12. CB provides additional reasons for dismissal of the remaining state law claims. *Id.* at 12-13.

## II. <u>Legal Standard</u>

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint

may be dismissed under Rule 12(b)(6) for one of two reasons: (1) it lacks a cognizable legal theory; or (2) it alleges insufficient facts to support a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The court must construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded allegations of material facts as true, and draw all reasonable inferences from well-pled factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required, however, to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a Rule 12(b)(6) motion, a court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

## III. Request for Judicial Notice

Before turning to the substance of CB's motion to dismiss, the Court must address its voluminous request for judicial notice. *See generally* Request for Judicial Notice ("RJN"), Docket No. 18-2.

CB asks the Court to judicially notice thirty exhibits principally to show that "Community Brigade" is generic or not otherwise protectable as a trademark. *Id.* Included in the request are certain USPTO records relevant to the dispute: printouts of USPTO office actions (*see* RJN, Exs. 1-3), three USPTO Supplemental Register certificates for LAEPF's "Community Brigade" marks (*see* RJN, Exs. 4-6), USPTO Trademark Status and Document Retrieval ("TSDR") reports for each of the marks (*see* RJN, Exs. 7-9), a TTAB proceeding record for a pending cancellation request (*see* RJN, Ex. 10), and additional USPTO office actions concerning LAEPF's pending logo applications (Exs. 28-30). Additionally, the RJN includes pages from LAEPF's website, historical and news-media materials, third-party website materials, a Los Angeles County Fire Department presentation, and a research publication. *Id.*, Exs. 11-27.

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure," subject to "two exceptions": "the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Under the incorporation-by-reference doctrine, "[a] court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The Court may take judicial notice of publicly available statements for the fact that such statements were made and were publicly available, although not for the truth of contested factual assertions therein. *See* Fed. R. Evid. 201(b)(2). "Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja*, 899 F.3d at 999.

First, the Court may consider the USPTO registration certificates and related official registration materials to the limited extent the FAC relies on them. The FAC alleges that LAEPF owns the "Community Brigade" trademark under three registration numbers and alleges that LAEPF owns the "L.A. County Fire Dept. Community Brigade" logo, pending registration under three other serial numbers. *See* FAC ¶ 37. The FAC's first cause of action also summarizes the three "Community Brigade" registrations in a table. *Id.* ¶¶ 57-58. Because LAEPF's trademark claims rely on the existence of those registrations and applications, the Court may consider official registration and application-status materials for the limited purpose of determining what was filed and what register the marks appear on.[2] Neither incorporation by reference nor judicial notice, however, permits the Court to adopt CB's characterization of those records. *See Pinterest Inc. v. Pintrips Inc.*, 15 F. Supp. 3d 992, 997 (N.D. Cal. 2014) (explaining that a court may not take notice of disputed facts in public records, including whether a mark is generic). The Court may consider that a registration certificate states, "Supplemental Register," or that an Office Action issued on a particular date. It may not treat those materials as establishing that the mark is generic or lacks

[2] The Court does not treat all USPTO Office Actions as incorporated by reference merely because the FAC references Plaintiff's registrations and applications. The FAC relies on the existence of LAEPF's registrations and pending applications; it does not necessarily rely on the examining attorneys' interim reasoning or third-party evidence attached to Office Actions. Further, those materials may be noticed, if at all, only for the fact that the USPTO made certain statements or took certain actions on particular dates. *See Pinterest*, 15 F. Supp. 3d at 997. They may not be used to resolve the disputed factual question of how the relevant public understands LAEPF's mark.

secondary meaning at the pleading stage. *Id*. at 997-98.

Second, the Court declines to treat the remaining documents – LAEPF's website pages, third-party websites, news articles, historical materials, and media exhibits – as incorporated by reference or judicially noticeable. Although the FAC alleges that LAEPF purchased Community Brigade domains and used the mark in commerce, *see* FAC ¶ 33, that does not mean the FAC necessarily relies on every page CB has selected from LAEPF's website. Additionally, nowhere does the FAC rely on CB's selected third-party websites, media reports, or historical materials concerning other volunteer brigades. These documents are also not judicially noticeable for the purpose CB seeks to introduce them. "Even assuming these miscellaneous documents are accurate and reliable in the first instance, it is entirely improper for defendant to offer such exhibits to demonstrate that plaintiff's mark is generic." *Pinterest*, 15 F. Supp. 3d at 998 (citations omitted); *see also Estate of Fuller v. Maxfield & Oberton Holdings*, LLC, 906 F. Supp. 2d 997, 1004 (N.D. Cal. 2012) (holding that it is inappropriate for a court to take judicial notice of facts on a webpage whose source and reliability are unknown).

Accordingly, CB's request is GRANTED IN PART and DENIED IN PART. The Court considers the official USPTO registration and application materials to the extent they are referenced in or central to the FAC's trademark allegations, and takes judicial notice of the existence, dates, and contents of official USPTO and TTAB records. The Court does not, however, take judicial notice of Defendant's disputed conclusions that those materials establish genericness or lack of protectable trademark rights. To the extent Defendant seeks judicial notice or incorporation by reference for those purposes, the request is denied.

## IV. <u>Motion to Dismiss</u>

CB seeks dismissal of each of LAEPF's claims against it; these include all alleged causes of action except for LAEPF's breach of contract claim ("Count 7"). CB argues that a cross-cutting defect of impermissible group pleading runs through much of the FAC. *See* Motion at 12-13. CB also contends that LAEPF's trademark claims should be dismissed because "Community Brigade" is generic and cannot function as a trademark. *Id*. CB provides additional reasons for dismissal of the remaining state law claims. *Id*.

### A. Group Pleading

CB contends that a fatal defect runs through Counts 2-6, 8, and 9 because they "attribute the alleged misconduct to six defendants in aggregate – five individuals and the corporate entity –

without identifying which acts are attributable to [CB]." *See* Motion at 22. CB asserts that this is impermissible group pleading.

Ninth Circuit "precedent does not prohibit collective pleading so long as the complaint gives defendants fair notice of the claims against them." *Briskin v. Shopify, Inc.*, 135 F.4th 739, 762 (9th Cir. 2025). Further, the requirement that the actions of each defendant be identified within the complaint "may be relaxed as to matters within the opposing party's knowledge." *See Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citation omitted); *see also Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439-40 (1987), *overruled on other grounds as stated in Flood v. Miller*, 35 Fed. Appx. 701, 703 n.3 (9th Cir. 2002), (holding that allegations satisfied pleading requirements because it was reasonable to presume that corporate fraud involved collective action of the officers where the defendants were a narrowly defined group of individuals).

The Court would find that the FAC satisfies that pleading standard. This is not a case where a plaintiff lumps together a large group of unrelated defendants and leaves a corporate defendant to guess why it has been sued. The FAC alleges a small, cohesive group: CB itself, three alleged senior corporate officers of CB, and two alleged agents or operational participants. *See* FAC ¶¶ 4-5, 46-47, 112. "A corporation is a legal entity that may act only through its agents, including officers, directors, and employees." *See United States v. Mongol Nation*, 370 F. Supp. 3d 1090, 1128 (C.D. Cal. 2019). LAEPF alleges that Pierson, Miller, and Phillips incorporated CB and served as its officers; Gibbs allegedly helped operationally form CB and shared insider knowledge for its benefit; Gibbs and Hauptman allegedly acted as CB's agents in connection with access-related conduct; and all five individual defendants allegedly acted directly under CB's name and controlled its policies and decision-making. *Id.* ¶¶ 4-5, 46-47, 52-53, 76, 88, 112, 120. Thus, even if the FAC does not explain the actions specifically taken by the individual defendants, this does not help CB – who is the sole movant here – because the challenged post-incorporation conduct is alleged to have been undertaken through CB's agents and for CB's benefit. LAEPF also expressly limits allegations concerning conduct prior to CB's incorporation to the five individually named defendants. *Id.* ¶ 6. Further, LAEPF is not required at the pleading stage to identify exactly which employee within the hierarchy of an entity defendant performed certain actions when that information is particularly within the opposing party's knowledge. *See Moore*, 885 F.2d at 540.

Accordingly, the Court would DENY the Motion as to Counts 2-6, 8, and 9 to the extent it is based on impermissible group pleading.[3]

**B. Trademark Claims (Counts One through Three)**

CB argues that LAEPF's "Community Brigade" mark is generic and cannot serve as a trademark.[4] *See* Motion at 13. LAEPF counters that these are fact-intensive inquiries not properly resolved at the pleading stage and that LAEPF has alleged sufficient facts to plausibly state a claim. *See* Opp. at 12.

To establish trademark infringement, "a plaintiff 'must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'" *Doctor's Best, Inc. v. Nature's Way Prods.*, LLC, 143 F.4th 1101, 1107 (9th Cir. 2025) (citing *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012)). "To state a claim for trademark infringement, false designation of origin, or unfair competition under the Lanham Act, [LAEPF] must, among other things, 'plausibly allege' that it owns a valid trademark." *See Pinterest*, 15 F. Supp. 3d at 997 (citing *Intel Corp. v. Americas News Intel Pub., LLC*, No. 3:09-cv-05085-CRB, 2010 WL 2740063, *2, *5 (N.D. Cal. July 12, 2010)). "Marks generally are classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." *Id.*

"Generic marks are not capable of receiving protection because they identify the product, rather than the product's source." *Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir. 2005) (internal quotations marks omitted). "Descriptive marks 'define a particular characteristic of the product in a way that does not require any exercise of the imagination.' A descriptive mark can receive trademark protection if it has acquired distinctiveness by establishing 'secondary meaning' in the marketplace." *Id.* (citations omitted).

[3] The Court will address claim-specific collective pleading arguments in the relevant sections of this Tentative Ruling. The Court notes, however, that CB does not provide a specific argument as to why group-pleading dooms LAEPF's trademark claims. Indeed, while included in CB's group-pleading section, Counts 2 and 3 do not meaningfully present a group-pleading problem because they are pleaded directly against the "Imposter Entity" and repeatedly identify CB's own alleged conduct: operating under the "Community Brigade" name, acting through agents, filing a fictitious business name registration, soliciting donations, attempting third-party agreements, opening a same-name bank account, and representing ownership of the "Community Brigade" tradename. *See* FAC ¶¶ 76, 88.

[4] CB also challenges LAEPF's Lanham Act claim as to its "L.A. County Fire Dept. Community Brigade" logo because the applications are still pending. *See* Motion at 21-22. LAEPF, however, does not allege any Lanham Act claims as to the logo in its FAC.

"To determine whether a descriptive mark has secondary meaning, a finder of fact considers: (1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Id.* at 930 (internal quotations and citation omitted).[5]

Courts in the Ninth Circuit, however, have found that the fact-specific nature of these inquiries generally precludes a determination at the pleading stage. *See, e.g.*, *Pinterest*, 15 F. Supp. 3d at 999; *see also* J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:12 (5th ed.) ("Genericness cannot usually be determined on a Rule 12(b)(6) motion to dismiss, because it is rare that plaintiff will plead so ineptly that it will include allegations that its asserted mark is a generic name."). When courts have decided such fact-specific issues, they "generally have done so only where the complaint suffers from a complete failure to state a plausible basis for trademark protection." *Pinterest*, 15 F. Supp. 3d at 998-99.

Here, LAEPF asserts a plausible theory, and CB's "motion fails to justify any deviation from the widely-shared stance that a Rule 12(b)(6) motion is generally an improper vehicle for establishing that a mark is generic or functional." *Id.* LAEPF alleges that it has used the "Community Brigade" mark in commerce since at least May of 2021 and that the Los Angeles community associates the mark with LAEPF. *See* FAC ¶¶ 31, 59. LAEPF has gained this reputation within the community through televised press conferences and "numerous articles from publications like the Los Angeles Times" using the name "Community Brigade." *Id.* ¶ 34. Additionally, LAEPF has plausibly alleged that its mark has attained a secondary meaning for those in the Los Angeles community that are involved with and knowledgeable about fire prevention efforts. For example, LAEPF alleges that it has an arrangement with the Los Angeles County Fire Department for the Community Brigade program. *Id.* ¶ 36. Thus, LAEPF sufficiently pleads secondary meaning.

CB's argument that LAEPF's "Community Brigade" mark must be generic because it is registered only on the U.S. Patent and Trademark Office Supplemental Register is unpersuasive. *See* Motion at 12, 14. "Registration on the principal register shows that the Commissioner has

---

[5] "Arbitrary" or "fanciful" marks "employ words and phrases with no commonly understood connection to the product . . . and 'trigger the highest degree of trademark protection' . . . . [while "suggestive marks"] suggest a product's features and require consumers to exercise some imagination to associate the suggestive mark with the product." *JL Beverage Co. v. Jim Beam Brands Co.*, 828 F.3d 1098, 1107 (9th Cir. 2016) (citations omitted).

determined that the mark is distinctive. Registration on the supplemental register means that the Commissioner has determined that the mark is 'capable of distinguishing.'" *Cal. Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451, 1454 (9th Cir. 1985) (citing 15 U.S.C. § 1091). Registration on the Supplemental Register does not mean, however, that LAEPF is "barred from establishing secondary meaning in subsequent litigation against any alleged infringers using the mark at the time of registration." *Id.*; *see also Openai, Inc. v. Open A.I., Inc.*, 719 F. Supp. 3d 1033, 1046 (N.D. Cal. 2024) ("A mark on the Supplemental Register is not presumed to be valid or exclusive. Registration on the Supplemental Register does, however, give the USPTO the authority to later reject confusingly similar marks.").

Accordingly, the Court would DENY the Motion as to LAEPF's trademark claims (Counts 1-3).

**C. Count Four**

LAEPF asserts that CB violated Cal. Penal Code § 502 ("Count 4"). In Count 4, LAEPF alleges that CB, through its agents, "gained access to and managed accounts and computer services for LAEPF" and "conspired to, and did, access, copy, modified, disrupted and interfered with [LAEPF's] access to, computer data and systems." *See* FAC ¶¶ 94, 98.

Cal. Penal Code § 502 was enacted to "expand the degree of protection afforded to individuals, businesses, and governmental agencies from tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Pen. Code § 502(a). The statute makes it illegal to knowingly and without permission access computers, computer systems, and computer networks. *See* Cal. Pen. Code § 502(c). It also provides a private right of action for an "owner or lessee of [a] computer, computer system, computer network, computer program, or data" who suffers damage or loss due to a violation of the statute. Cal. Pen. Code § 502(e).

LAEPF alleges that Gibbs and Hauptman cancelled or changed permissions to block LAEPF from access to computer systems and services, including LAEPF's Community Brigade website and other third-party services, and that they were believed to have been acting as agents of CB when doing so. FAC ¶ 5. Count 4 further alleges that Gibbs and Hauptman were administrators on various LAEPF computer systems, that Hauptman used access gained through his LAEPF work to cancel LAEPF personnel's access to certain services, and that "Defendants" collectively accessed, copied, deleted, removed access from, or modified credentials for LAEPF

systems. FAC ¶¶ 94-98. The Court would conclude that these allegations are sufficient to support LAEPF's claim that CB, the entity, knowingly and without permission accessed, altered, or destroyed LAEPF's computer systems under Cal. Penal Code § 502.

CB's argument that Count 4 should be dismissed because these allegations do not sufficiently explain when the conduct took place, and the only plausible inference is that the alleged conduct occurred prior to CB's incorporation, is unavailing. In general, a corporate entity cannot be liable for actions that occurred prior to its corporate existence. *See* Witkin, Summary of Cal. Law, Corps. (11th ed. 2025), § 63 ("The acts of the promoters do not bind the corporation prior to its organization, for until it comes into existence it cannot be a principal."). The FAC alleges that CB was incorporated on September 2, 2025. *See* FAC ¶ 19. CB contends that LAEPF's allegations tie Gibbs and Hauptman's conduct to their time as volunteers and that their volunteer relationships are "pre-existing relationships with LAEPF and predate[] Community Brigade's 9/2/25 incorporation." *See* Motion at 24.

While the FAC does not allege the precise date on which Gibbs or Hauptman changed permissions or cancelled access, it does expressly allege that Gibbs and Hauptman performed the unauthorized access and alteration of LAEPF's computer systems while acting as CB's agents. *See* FAC ¶¶ 4-5. Additionally, CB points to Gibbs's 2024 contractor agreement with LAEPF to show that the alleged conduct occurred pre-incorporation, but Gibbs's contractor relationship with LAEPF is alleged to have been ongoing through January of 2026, well after CB's incorporation. *Id.* ¶ 115. Moreover, the FAC alleges continuing deprivation of access and continuing retention or control of LAEPF's digital materials. *See* FAC ¶ 5. LAEPF alleges that its digital files, templates, and login information are presently in CB's control and have not been returned. *Id.* LAEPF therefore pleads more than merely a "bare information-and-belief conclusion," *cf.* Motion at 24, that the alleged violation is attributed to the entity defendant.

Accordingly, the Court would DENY CB's Motion as to Count 4. The FAC gives CB fair notice that LAEPF seeks to hold it liable for access-related conduct allegedly undertaken by Gibbs and Hauptman as CB's agents, and for the continuing deprivation of LAEPF's digital materials, credentials, and account access. CB may renew its arguments if discovery shows that the relevant access-related conduct occurred before CB existed or outside any agency relationship. At the pleading stage, however, the allegations in the FAC are sufficient.

**D. Count Five**

LAEPF next brings a claim for conversion, alleging that CB has taken and utilized LAEPF's computer systems and physical equipment, has converted LAEPF's goodwill within its community, and has diverted donations meant for LAEPF ("Count 5"). CB contends that the physical property conversion theory fails due to impermissible group pleading and that neither goodwill nor donations allegedly given to CB by mistake can plausibly give rise to a conversion claim.

"Conversion is the wrongful exercise of dominion over the property of another." *Greka Integrated, Inc. v. Lowrey*, 133 Cal. App. 4th 1572, 1581 (2005). To state a claim for conversion, a plaintiff must allege the following elements: (1) ownership or right to possession of the property; (2) wrongful disposition of the property right; and (3) damages. *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003). While the plaintiff need not allege that he or she was the "absolute owner of the property converted," the plaintiff must allege that he or she was "entitled to immediate possession at the time of conversion." *Bastanchury v. Times-Mirror Co.*, 68 Cal. App. 2d 217, 236 (1945) (emphasis omitted).

The Court would find that while the FAC sufficiently alleges a conversion theory based on physical property and access to computer systems, LAEPF does not plausibly allege conversion theories based on goodwill and diverted donations. The Court proceeds to discuss each of these three theories.

1. <u>Physical and Digital Property</u>

The Court would conclude that the FAC sufficiently alleges conversion of LAEPF's physical and digital property. As to the physical property theory, the FAC alleges that Defendants took and used property belonging to LAEPF, including a Ford F-550 Super Duty outfitted truck, protective and fire-response equipment, and at least twelve Starlink terminals. *See* FAC ¶ 107. Additionally, LAEPF alleges that Defendants used LAEPF's digital property in the form of access information, credentials, digital files, templates, and login information. *Id.* ¶¶ 5, 106. CB's only challenge to either theory rests on the same group-pleading argument addressed above, and the Court rejects it for the same reasons. *See* Section IV.A, *supra*. Count 5 may therefore proceed to the extent it is based on alleged conversion of LAEPF's physical and digital property.

2. <u>Goodwill</u>

While LAEPF is correct in that the tort of conversion has expanded in recent years to

include conversion of some intangible property, LAEPF's "goodwill" theory of conversion is not plausible under existing California law.

Traditionally, only tangible property could be converted under California law. *See Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th 1559, 1565 (1996). Thus, early California cases rejected conversion claims based on the unauthorized taking of intangible property such as customer names, trade secrets or a company's goodwill. *See, e.g.*, *Olschewski v. Hudson*, 87 Cal. App. 282, 288 (1927). Later cases allowed conversion actions with respect to intangible property that is merged with or reflected in something tangible, such as a check. *See Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 765 (2022). Now, courts increasingly allow actions for conversion of intangible property, without discussion of the "merged documents" requirement at all. *See Welco Elecs., Inc. v. Mora*, 223 Cal. App. 4th 202, 211 (2014) (collecting cases); *see also Kremen*, 337 F.3d at 1033 (explaining that California courts "routinely apply the tort to intangibles without inquiring whether they are merged in a document").

Still, LAEPF cites to no published cases that have held that goodwill specifically is intangible property that can be the subject of conversion. "Unlike the domain name at issue in *Kremen* or net operating loss at issue in *Fremont Indemnity Co. v. Fremont General Corp.,* 148 Cal. App. 4th 97 (2007), the goodwill of a business is a highly abstract property interest that does not lend itself to the elements of conversion. Indeed, it is difficult to fathom how one could determine whether a defendant wrongfully interfered with the claimant's possession of such abstract property." *Boon Rawd Trading Int'l Co., Ltd. v. Paleewong Trading Co.*, 688 F. Supp. 2d 940, 955 (N.D. Cal. 2010). Further, while *Mora* suggests that "[t]here is perhaps no essential reason why there might not be a conversion of . . . the good will of a business," that case ultimately concerned conversion in the form of charges to the plaintiff's credit card. *See Mora*, 223 Cal. App. 4th at 210. Unlike a business's goodwill, the credit card charges in *Mora* lent themselves to the elements of conversion because the "plaintiff's interest was specific, plaintiff had control over its credit card account, and plaintiff had an exclusive claim to the balance in the account." *Id.* at 211.

Accordingly, the Court declines to extend conversion under California law to the conversion of goodwill. The Court would therefore GRANT IN PART the Motion to the extent it is based on alleged conversion of LAEPF's goodwill, with leave to amend.

3. <u>Donations</u>

The Court would also conclude that LAEPF's theory of conversion based on diverted

donations is not plausibly alleged.

"Money can be the subject of an action for conversion if a specific sum capable of identification is involved." *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 452 (1997) (citation omitted). Where courts have allowed claims of conversion of money, the cases typically involve "specific funds held for the benefit of others," such as where an agent receives money on behalf of a principal and refuses to account for it. *See* Gaab & Reese, Rutter Group Prac. Guide: Civ. Pro. Before Trial Claims & Def. (The Rutter Group 2025), ¶ 12:117.

The FAC does not allege that sort of property interest. LAEPF alleges that CB solicited and deposited "several donations" into a "Community Brigade" bank account but also that LAEPF does not have access to that account and cannot presently state the amount of diverted donations without discovery. *See* FAC ¶ 104. LAEPF alleges merely that donors were confused by Defendants' alleged impersonation and that, but for that impersonation, the donations "would be received by LAEPF." *Id.* ¶105. Those allegations describe a lost donation opportunity or expectancy, not conversion of LAEPF's property. Donor confusion cannot create an immediate possessory right in funds LAEPF never held and that were not allegedly entrusted to CB for LAEPF's benefit.

Accordingly, the Court would GRANT IN PART CB's Motion as to Count 5 only to the extent the conversion claim is based on diverted donations, with leave to amend. Count 5 otherwise proceeds to the extent it is based on LAEPF's alleged physical property and digital property.

**E. Count Six**

LAEPF next alleges that CB committed civil theft under Cal. Penal Code § 496 by diverting donations intended for LAEPF; misappropriating LAEPF's digital accounts/data and goodwill; and seizing LAEPF's vehicle, equipment, and operating funds ("Count 6"). As to Count 6, CB argues only that Count 6 should be dismissed because the FAC fails to specifically allege facts showing that CB itself received stolen property and contends that grouped allegations are insufficient. *See* Motion at 28.

Subsection (a) of Cal. Penal Code § 496 defines the criminal offense of receiving stolen property. It provides: "Every person who buys or receives any property that has been stolen or that has been obtained in any manner constituting theft or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding

any property from the owner, knowing the property to be so stolen or obtained" is subject to incarceration. Cal. Penal Code § 496(a). Subsection (c) provides civil remedies for any person injured by a violation of subsection (a), permitting that person to sue for treble damages, attorney fees, and costs. Cal. Penal Code § 496(c).

The Court is not persuaded by CB's arguments for dismissal. The FAC alleges that the purported civil theft began as early as late 2025 and has continued to the present. *See* FAC ¶ 111. The FAC further alleges that, "[i]n light of their prior relationships and dealings with [LAEPF]," Defendants knew they did not own or have an immediate right to possess the allegedly stolen or misappropriated property. *Id.* The FAC additionally alleges that Defendants acted with "full knowledge of LAEPF's ownership and right to access and control of the data, computer systems, assets, reputation," and that the challenged actions were undertaken by the individual defendants directly under CB's name. *Id.* ¶112. As previously discussed, those same individuals are alleged to constitute CB's ownership and to control CB's decision-making. *Id.* The FAC therefore plausibly alleges knowledge attributable to CB at the pleading stage. Accordingly, the Court would DENY the Motion as to Count 6.

**F. Count Eight**

To state a claim under the UCL, a plaintiff must "establish that the practice is either unlawful (*i.e.*, is forbidden by law), unfair (*i.e.*, harm to victim outweighs any benefit) or fraudulent (*i.e.*, is likely to deceive members of the public)." *Albillo v. Intermodal Container Servs., Inc.*, 114 Cal. App. 4th 190, 206 (2003) (citations omitted).

To plead fraud under the UCL, the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *See Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). UCL plaintiffs must point to a misrepresentation with particularity and plead that the misrepresentation "was an immediate cause of the injury-producing conduct," but not necessarily "the sole or even the predominant or decisive factor." *See In re Tobacco II Cases*, 46 Cal.4th 298, 326 (2009) (internal quotation marks omitted).

CB asserts that LAEPF's UCL claim should be dismissed because it is derivative of a failed claim for trademark-infringement, and the alleged "fraudulent activities," *see* FAC ¶ 125, are not pled with particularity as required by Rule 9(b). *See* Motion at 28-29. First, LAEPF's UCL claims are not insufficient merely because they are derivative of other claims. "The Ninth Circuit has

consistently held that state common law claims of unfair competition and actions pursuant to California Business and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act. These claims are subject to the same test, and the critical determination is whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who makes what product." *Bratt v. Love Stories TV, Inc.*, 713 F. Supp. 3d 847, 863 (S.D. Cal. 2024) (internal quotation marks omitted) (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994); *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008)). Because the Court would find that LAEPF's trademark-related claims are sufficient to survive CB's motion to dismiss, the Court would likewise find that LAEPF's derivative UCL claims are also sufficient.

The Court additionally would find that LAEPF satisfies Rule 9(b) as to the UCL fraudulent-prong theory. Count 8 incorporates detailed allegations that Defendants created and operated a same-name entity and represented to the public and donors that the entity was LAEPF's Community Brigade. *See* FAC ¶¶ 4, 6-7, 46-47, 52, 123-127. The FAC further alleges that CB implied approval by LAEPF and the Los Angeles County Fire Department, copied LAEPF's website and branding, filed a duplicate fictitious business name registration, opened a same-name bank account at LAEPF's bank, and solicited donations under that identity. *Id.* ¶¶ 7, 47-53, 61-63, 76, 87-89, 103-105, 120. The FAC also identifies the relevant actors, including the entity's alleged CEO, CFO, Secretary, agents, and operational participants; anchors the scheme to dates beginning in late 2025; and explains how the alleged conduct was likely to mislead the public. *Id.* ¶¶ 4-5, 46-47, 52-53, 66-67, 77, 89, 103-105, 112, 120. At the pleading stage, those allegations give Defendant fair notice of the fraudulent course of conduct alleged and are sufficient under Rule 9(b). *See Semegen*, 780 F.2d at 735 (holding that while mere conclusory allegations of fraud are insufficient, statements of the time, place and nature of the alleged fraudulent activities are sufficient). Accordingly, LAEPF properly pleads its claim against CB under the UCL.

**G. Count Nine**

LAEPF seeks a judicial declaration from this Court that it is the rightful and lawful owner of the "Community Brigade" mark and tradename, the "L.A. County Fire Dept. Community Brigade" logo, and the monies and assets donated to LAEPF for the Community Brigade program ("Count 9"). *See* FAC ¶ 132. CB argues that Count 9 should be dismissed because "this relief is entirely coextensive with the relief sought in Counts One, Two, and Three (trademark ownership

and rights), Count Five (conversion of assets and goodwill), and Count Six (civil theft of program assets)." *See* Motion at 29.

"The Ninth Circuit has directed district courts faced with whether to entertain claims for declaratory relief to consider, among other factors, whether the claim will settle all aspects of the controversy or serve some other useful purpose." *Top Agent Network, Inc. v. Zillow, Inc.*, No. 3:14-cv-04769-RS, 2015 WL 7709655, at *9 (N.D. Cal. Apr. 13, 2015) (citing *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998)). As this Court has explained, "[w]hen claims for declaratory relief are duplicative of other claims, then declaratory relief is therefore unnecessary and redundant." *Layton v. Ocwen Loan Servicing, LLC*, No. 5:15-cv-00840-GW-(Ex), 2015 WL 4512015, at *6 (C.D. Cal. July 23, 2015) (citing *Concorde Equity II, LLC v. Miller*, 732 F. Supp. 2d 990, 1003 (N.D. Cal. 2010)).

The Court would conclude that LAEPF seeks declaratory relief as to more than what is contained in its other claims, and as such, dismissal of the claim is not required. Specifically, it seeks a declaration that it is the owner of certain assets, including donations paid to it by third parties. *See* FAC ¶ 132. Though this request is related to the trademark dispute, it is not duplicative of the infringement claims in the FAC. Some of the third-party donors have purportedly contacted LAEPF seeking to transfer their donations to CB, after CB represented to the third parties that LAEPF was not the real Community Brigade organization. *Id.* ¶ 103. CB has also allegedly demanded that LAEPF turn over these monies and assets. *Id.* ¶¶ 8, 102, 131. This is not captured by any of LAEPF's other claims. Unlike other cases where district courts found declaratory relief claims duplicative of infringement claims, LAEPF's request would not "necessarily be determined through the adjudication" of LAEPF's infringement claim. *Cf. Stavrinides v. Vin Di Bona*, No. 2-18-cv-00314-CAS-(JPRx), 2018 WL 1311440, at *6 (C.D. Cal. Mar. 12, 2018) (dismissing a claim for declaratory relief "[b]ecause these rights [in the declaratory relief claim] would necessarily be determined through the adjudication of plaintiffs' copyright infringement claim, [so] declaratory relief is duplicative and unnecessary.").

The Court would therefore exercise its discretion in maintaining LAEPF's separate claim for declaratory relief, at least for now. Accordingly, the Court would DENY the Motion insofar as it seeks dismissal of Count 9.

**H. Specific Prayers for Relief**

Lastly, CB challenges two specific prayers for relief within the FAC: LAEPF's prayer for

restitution under its UCL claim and punitive damages generally. *See* Motion at 30-31. The Court would decline to dismiss any claim or portion of any claim on the grounds that LAEPF failed to properly plead its demand for relief. *See* 5 Wright & Miller, Fed. Prac. & Proc. (3d ed.), § 1255 ("[T]he selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.").

District courts in the Ninth Circuit have typically held that, because a specific demand for relief is not a "claim," a Rule 12(b)(6) motion to dismiss for failure to state a claim is not the proper vehicle for striking a prayer for relief. *See, e.g.*, *Massey v. Banning Unified Sch. Dist.*, 256 F. Supp. 2d 1090, 1092 (C.D. Cal. 2003) ("A Rule 12(b)(6) motion will not be granted merely because plaintiff requests a remedy to which he or she is not entitled.") (internal quotation marks and citation omitted); *Rodriguez v. Serv. Employees Int'l*, 755 F. Supp. 2d 1033, 1053 (N.D. Cal. 2010) (it is inappropriate "to dismiss a complaint under Rule 12(b)(6) on the basis that the remedies sought in it are unavailable") (citing *Massey*, 256 F. Supp. 2d at 1092).

CB cites *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974-75 (9th Cir. 2010), for the proposition that "Rule 12(b)(6) reaches specific relief items that fail under governing law." *See* Motion at 30. *Whittlestone*, however, merely held that "Rule 12(f) does not authorize district courts to strike claims for damages on the ground that such claims are precluded as a matter of law." *See* 618 F.3d at 974. Thus, the Ninth Circuit did not have occasion to reach the question of whether 12(b)(6) is the appropriate vehicle for challenging specific prayers for relief. The Court therefore does not read *Whittlestone* to require dismissal of prayers for relief under Rule 12(b)(6), particularly where the underlying claims are otherwise adequately pleaded. Because LAEPF has sufficiently alleged the core elements of its underlying claims, any dispute over the ultimate availability of restitution or punitive damages is premature at the pleading stage. Accordingly, the Court would DENY CB's Motion to the extent it challenges LAEPF's specific prayers for relief without prejudice to raising its argument at the summary judgment stage, or later.

## V. <u>Conclusion</u>

Based on the foregoing discussion, the Court would **GRANT IN PART** and **DENY IN PART** CB's Motion to Dismiss. The Motion is granted only as to Count 5 to the extent the conversion claim is based on goodwill and diverted donations, with leave to amend, and is otherwise denied. CB's request for judicial notice is **GRANTED IN PART** and **DENIED IN**

**PART** as set forth above.