ELLEN KAUFMAN WOLF (Cal. Bar No. 110686)
ewolf@wolfwallenstein.com
CHRISTOPHER J. CUMMISKEY (Cal. Bar No. 244249)
ccummiskey@wolfwallenstein.com
EVAN W. GRANT (Cal. Bar No. 234031)
egrant@wolfwallenstein.com
**WOLF WALLENSTEIN, PC**
11400 West Olympic Boulevard, Suite 700
Los Angeles, California 90064
Telephone: (310) 622-1000
Facsimile: (310) 457-9087

Attorneys for Defendant and Counterclaimant Community Brigade and Counterclaimant The Brigade

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LOS ANGELES EMERGENCY PREPAREDNESS FOUNDATION dba COMMUNITY BRIGADE, a California nonprofit corporation,

Plaintiff,

v.

MIKKE PIERSON, an individual; JASON DAX MILLER aka DAX MILLER, an individual; DANA WOLF PHILLIPS, an individual; KEEGAN GIBBS, an individual; TYLER HAUPTMAN, an individual; COMMUNITY BRIGADE, a California nonprofit corporation; and DOES 1 through 50, inclusive,

Defendants

AND RELATED COUNTERCLAIMS.

Case No. 2:26-cv-02463-GW (DFMx)

**COUNTERCLAIMANTS COMMUNITY BRIGADE AND THE BRIGADE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COUNTERDEFENDANTS' MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS (DKT. 63)**

Hearing: December 17, 2026
Time: 8:30 a.m.
Courtroom: 9D
Judge: Hon. George H. Wu

Complaint Filed: March 6, 2026
SAC Filed: July 8, 2026
Trial Date: June 22, 2027

## TABLE OF CONTENTS

I. INTRODUCTION ........ 10
II. THE FIRST AMENDED COUNTERCLAIMS ........ 11
III. LEGAL STANDARD ........ 12
IV. ARGUMENT ........ 12
A. This Court Has Already Ruled That Rule 12(b)(6) Does Not Reach Part of a Claim or a Requested Remedy ........ 12
B. The Assignment Does Not Defeat Any Counterclaim. ........ 14
1. Which Co-Counterclaimant Holds a Claim Is a Rule 17 Question, Not a Ground for Dismissal. ........ 15
2. California Treats Joinder of Assignor and Assignee as the Right Way to Sue. ........ 15
3. Rule 8(d) Permits Alternative Pleading, and One Sufficient Alternative Is Enough. ........ 16
4. *Sprewell* Does Not Let the Court Construe the Assignment Against the Pleader. ........ 16
5. The Cited District Court Orders On Standing Do Not Support the Motion. ........ 17
6. The Board-Seat Representation Was Made to The Brigade ........ 17
C. The Third Counterclaim States a Claim for Breach of Contract. ........ 18
1. A Contract May Be Implied From Conduct, and Whether One Was Formed Is a Fact Question. ........ 18
2. The 2023 and 2025 Allegations Describe One Continuing Arrangement. ........ 19
3. An Open Fee Term Does Not Defeat a Performed Contract ........ 19
4. Counterdefendants' Authorities Were Decided on Evidentiary Records. ........ 19
5. Specific Performance Is a Remedy, and *Ellison* Affirmed It. ........ 20

D. The Fourth Counterclaim Pleads Promissory Fraud With Particularity. 20

1. The FACC Pleads Who, What, When and to Whom. 20

2. Intent Not to Perform Is Pleaded With the Circumstances *Tenzer* Identifies. 21

3. Forbearance Is Reliance. 22

4. Ms. Pond Had a Duty to Speak. 22

5. A Fraud Claim May Proceed Alongside the Contract Claim. 23

E. The Fifth Counterclaim States a Claim for Breach of Fiduciary Duty. 23

1. One Who Holds Money for Another's Specific Purpose Is a Fiduciary. 23

2. Counterclaimants May Enforce Duties Over the Gifts Given for Their Program. 24

3. Mr. Woodworth and Ms. Pond Are Liable for Breaches They Committed. 25

F. The Tenth Counterclaim States a Claim for Interference. 26

G. The Eleventh Counterclaim States a UCL Claim. 27

H. If Any Count Is Dismissed, Leave to Amend Should Be Granted. 27

V. CONCLUSION 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcon Ent., LLC v. Tesla, Inc.*,
No. 24-cv-09033-GW-(RAOx), 2025 U.S. Dist. LEXIS 66291 (2025) .......... 13

*Anderson v. Edward D. Jones & Co.*,
990 F.3d 692 (9th Cir. 2021) .......... 16

*ASARCO, LLC v. Union Pac. R.R. Co.*,
765 F.3d 999 (9th Cir. 2014) .......... 17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 12

*Beckwith v. Dahl*,
205 Cal. App. 4th 1039 (2012) .......... 22

*Bigler-Engler v. Breg, Inc.*,
7 Cal. App. 5th 276 (2017) .......... 22

*BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*,
716 F. Supp. 3d 835 (C.D. Cal. 2024) .......... 16

*Bustamante v. Intuit, Inc.*,
141 Cal. App. 4th 199 (2006) .......... 19

*Cain v. State Farm Mut. Auto. Ins. Co.*,
47 Cal. App. 3d 783 (1975) .......... 15

*Cal. Lettuce Growers v. Union Sugar Co.*,
45 Cal. 2d 474 (1955) .......... 19

*Cal. Sch. Emps. Ass'n v. Sunnyvale Elementary Sch. Dist.*,
36 Cal. App. 3d 46 (1973) .......... 19

*City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*,
43 Cal. 4th 375 (2008) .......... 23

*Ellison v. Ventura Port Dist.*,

80 Cal. App. 3d 574 (1978) .......... 20

*Emery v. Visa Int'l Serv. Ass'n*,
95 Cal. App. 4th 952 (2002) .......... 27

*Est. of Prasad ex rel. Prasad v. Cnty. of Sutter*,
958 F. Supp. 2d 1101 (E.D. Cal. 2013) .......... 16

*Flores v. Macerich Stonewood, LLC*,
2026 WL 2001216 (C.D. Cal. June 25, 2026) .......... 17

*Foley v. Interactive Data Corp.*,
47 Cal. 3d 654 (1988) .......... 18

*Frances T. v. Village Green Owners Ass'n*,
42 Cal. 3d 490 (1986) .......... 25

*Franklin v. Midwest Recovery Sys., LLC*,
No. 8:18-cv-02085-JLS-(DFMx), 2020 WL 3213676 (C.D. Cal. Mar. 9, 2020) .......... 13

*Geernaert v. Mitchell*,
31 Cal. App. 4th 601 (1995) .......... 17

*Hardman v. Feinstein*,
195 Cal. App. 3d 157 (1987) .......... 25

*Holt v. College of Osteopathic Physicians & Surgeons*,
61 Cal. 2d 750 (1964) .......... 25

*Huong Que, Inc. v. Luu*,
150 Cal. App. 4th 400 (2007) .......... 24

*Inventist, Inc. v. Ninebot Inc.*,
664 F. Supp. 3d 1211 (W.D. Wash. 2023) .......... 15

*Johnson v. County of Fresno*,
111 Cal. App. 4th 1087 (2003) .......... 15

*Jones v. Las Vegas Metro. Police Dep't*,
873 F.3d 1123 (9th Cir. 2017) .......... 15

*JRS Products, Inc. v. Matsushita Electric Corp. of America*,
115 Cal. App. 4th 168 (2004)........................................................ 26, 27

*Kent v. N. Cal. Reg'l Office of Am. Friends Serv. Comm.*,
497 F.2d 1325 (9th Cir. 1974)........................................................ 15

*Khoury v. Maly's of Cal., Inc.*,
14 Cal. App. 4th 612 (1993)........................................................ 18

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003)........................................................ 26

*L.B. Rsch. & Educ. Found. v. UCLA Found.*,
130 Cal. App. 4th 171 (2005)........................................................ 24

*Ladas v. Cal. State Auto. Ass'n*,
19 Cal. App. 4th 761 (1993)........................................................ 19

*Lazar v. Superior Ct.*,
12 Cal. 4th 631 (1996)........................................................ 23

*Lemus v. Rite Aid Corp.*,
613 F. Supp. 3d 1269 (C.D. Cal. 2022)........................................................ 21

*LiMandri v. Judkins*,
52 Cal. App. 4th 326 (1997)........................................................ 22

*Massey v. Banning Unified Sch. Dist.*,
256 F. Supp. 2d 1090 (C.D. Cal. 2003)........................................................ 13

*McMillin v. Eare*,
70 Cal. App. 5th 893 (2021)........................................................ 24

*Molsbergen v. United States*,
757 F.2d 1016 (9th Cir. 1985)........................................................ 16, 19

*Netbula, LLC v. Bindview Dev. Corp.*,
516 F. Supp. 2d 1137 (N.D. Cal. 2007) ........................................................ 19

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*,
157 Cal. App. 4th 835 (2007)........................................................ 22

*People v. Adir Int'l, LLC*,
114 Cal. App. 5th 275 (2025) .................................................................... 27
*Phillips v. W. Pac. R.R. Co.*,
22 Cal. App. 3d 441 (1971) ........................................................................ 15
*PMC, Inc. v. Kadisha*,
78 Cal. App. 4th 1368 (2000) ................................................................ 23, 25
*Rattagan v. Uber Techs., Inc.*,
17 Cal. 5th 1 (2024) ............................................................................ 22, 23
*Rennick v. O.P.T.I.O.N. Care, Inc.*,
77 F.3d 309 (9th Cir. 1996) ........................................................................ 19
*Retired Emps. Ass'n of Orange Cnty., Inc. v. County of Orange*,
52 Cal. 4th 1171 (2011) .............................................................................. 18
*Rodriguez v. Serv. Emps. Int'l*,
755 F. Supp. 2d 1033 (N.D. Cal. 2010) ...................................................... 13
*Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*,
2 Cal. 5th 505 (2017) .................................................................................. 26
*In re S. Shore Lake Erie Assets & Operations, LLC*,
No. 1:21-cv-02343, 2022 WL 1136772 (N.D. Ohio Apr. 18, 2022) .............. 16
*Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Serv. Co.*,
191 Cal. App. 4th 1394 (2011) .................................................................... 15
*Segura v. City of La Mesa*,
647 F. Supp. 3d 926 (S.D. Cal. 2022) ......................................................... 20
*Small v. Fritz Cos.*,
30 Cal. 4th 167 (2003) ................................................................................ 22
*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........................................................................ 16
*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .................................................................. 21, 28

*Tenzer v. Superscope, Inc.*,
39 Cal. 3d 18 (1985) ........ 21
*Tucker v. Pac. Bell Mobile Servs.*,
208 Cal. App. 4th 201 (2012) ........ 27
*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ........ 21
*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ........ 20
*Virtanen v. O'Connell*,
140 Cal. App. 4th 688 (2006) ........ 24
*Voyager Indem. Ins. Co. v. Goldsmith*,
733 F. Supp. 3d 905 (C.D. Cal. 2024) ........ 18
*Wells Fargo Bank, N.A. v. Kiwijet, Inc.*,
2026 WL 3416050 (C.D. Cal. Nov. 9, 2026) ........ 17
*Wolf v. Superior Ct.*,
107 Cal. App. 4th 25 (2003) ........ 23, 24

**Statutes**

Cal. Civ. Code § 47(b) ........ 26
Cal. Civ. Code § 1611 ........ 19
Cal. Civ. Code § 1621 ........ 18
Cal. Corp. Code § 5142 ........ 23, 25
Cal. Gov't Code § 12598 ........ 24

**Rules**

Fed. R. Civ. P. 8(d) ........ passim
Fed. R. Civ. P. 9(b) ........ 20, 21, 28
Fed. R. Civ. P. 12(b)(6) ........ 12, 13, 14, 20
Fed. R. Civ. P. 15(a)(2) ........ 12
Fed. R. Civ. P. 17(a) ........ 15, 28

Fed. R. Civ. P. 20(a)(1) ..... 12

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

For three years The Brigade ran the Community Brigade program. Its volunteers trained, deployed alongside the Los Angeles County Fire Department, and raised the money that bought the program's trucks and equipment. LAEPF was the back office. It handled the paperwork, the insurance, and the receipt of donations, and it was to take a fee for doing so. Donors gave to the program, not to LAEPF. LAEPF's own audited financial statements say as much: for this program it acts "as an agent, trustee, or intermediary rather than as a donee." When The Brigade incorporated as Community Brigade and asked for the designated gifts and the vehicles bought with them, LAEPF refused, claimed the program's assets as its own, and sued the volunteers. It now moves against the counterclaims that followed. It challenges five of the twelve counterclaims, and most of what it asks for is the dismissal of parts of them.

The motion does not contend that those facts, taken as true, show no wrong. It asks the Court to resolve fact disputes now: when the parties' arrangement was formed and on what terms, which of two co-counterclaimants owns which piece of a claim, and whether LAEPF's officers acted for themselves or only for the corporation. Each of those is a question for discovery and trial, and this Court has twice said so of comparable questions in this case, on Community Brigade's motions against LAEPF's own pleadings. Dkt. 24 at 9; Dkt. 40 at 5. The motion asks the Court to do what it twice refused to do, and it does so on authority that is not on point: four of its five contract cases were decided at summary judgment or after an evidentiary hearing, on records built through the discovery LAEPF now asks the Court to skip; the case cited to bar specific performance affirmed it; and the district court orders cited on standing do not address assignment. The motion should therefore be denied on these bases and those stated more fully below.

///

///

## **II. THE FIRST AMENDED COUNTERCLAIMS**

*The Back-Office Arrangement.* Beginning in 2023, LAEPF served as the program's administrative back office: The Brigade ran the program, donations intended for The Brigade were to remain within its control, and LAEPF was to take a fee of 10 to 15 percent for logistics, procurement, communications and financial reporting. FACC ¶¶ 7, 49. Mr. Woodworth, LAEPF's Chairman and Chief Executive Officer, was authorized to commit LAEPF. *Id.* ¶ 133. LAEPF reaffirmed the arrangement through 2025. In April and May 2025, an LAEPF director circulated a framework for a separate Brigade account, and Mr. Woodworth came "to see the value in separating the organizations—particularly the finances." *Id.* ¶¶ 79–81. On December 11, 2025, at a meeting the Fire Department convened, Mr. Woodworth agreed to a detailed governance structure and to seek his board's approval, then reversed course within days. *Id.* ¶¶ 88–90, 154, 186. LAEPF's audited financial statements describe it as "fiscal sponsor and fiscal agent" for programs "including the Community Brigade program," acting "as an agent, trustee, or intermediary rather than as a donee with variance power over these funds." Ex. E at 2.

*The designated gifts.* Donors, including Bayshore Global Management (a $750,000 grant in January 2025), the Harbor Freight Tools Foundation ($25,000 in December 2024), and Alexander Robertson IV (a 2019 Ram 2500), gave to LAEPF for the program. FACC ¶¶ 153, 185. LAEPF holds those gifts and the vehicles and equipment bought with them, refuses to account, and refuses to transfer them, though the donors themselves have demanded the transfer. *Id.* ¶¶ 111–112, 164, 173.

*The representations.* Mr. Woodworth promised transparency, accountability and governance over the funds routed to LAEPF; promised Mr. Gibbs a board seat in connection with his July 1, 2024 Statement of Work; signed a December 23, 2024 vehicle-funding agreement and then allocated none of the roughly $250,000 raised under it; and allowed The Brigade to believe a certified public accountant was accounting for its funds. *Id.* ¶¶ 51–62. Ms. Pond, LAEPF's Executive Administrator,

handled the program's donation records, received the requests to account, knew that Mr. Miller's February 4, 2025 email misidentified LAEPF's accountant, and said nothing. *Id.* ¶ 151.

*The assignment.* On September 23, 2026, the day before the original counterclaims were filed, The Brigade assigned to Community Brigade certain rights it held before September 2, 2025, including its rights under the Back-Office Arrangement, and kept its claims for fraud, breach of fiduciary duty, interference and unfair competition, among others. *Id.* ¶¶ 25, 30; Ex. C §§ 2–3. A November 4, 2026 amendment moved the charitable-trust and constructive-trust claims to Community Brigade. FACC ¶ 28; Ex. D. Each counterclaim states which counterclaimant asserts it. Where both do, each asserts it to the extent the right is its own, under Rules 8(d)(2) and 20(a)(1), and a continuing breach that straddles September 2, 2025 is pleaded in the alternative. FACC ¶¶ 27, 161.

## III. LEGAL STANDARD

A claim survives Rule 12(b)(6) if it pleads "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court accepts the well-pleaded allegations and draws all reasonable inferences for the pleader. Leave to amend is freely given. Fed. R. Civ. P. 15(a)(2).

## IV. ARGUMENT

### A. This Court Has Already Ruled That Rule 12(b)(6) Does Not Reach Part of a Claim or a Requested Remedy.

Most of this motion attacks part of a counterclaim or a form of relief, not a counterclaim. It asks the Court to dismiss the Third, Fifth, Tenth and Eleventh Counterclaims "to the extent" one counterclaimant or the other asserts them (Mot. 7, 10–11); to carve the board-seat, accounting, vehicle-funding and December 11, 2025 representations out of the Fourth (Mot. 16–18); to split counts at September 2, 2025 (Mot. 14, 20); and to bar specific performance and restitution (Mot. 15, 25). This Court

has already ruled twice in this case, on Community Brigade's own motions, that it will not do either. Dkt. 40 at 5; Dkt. 24 at 18. LAEPF opposed both motions and prevailed on these points. It now asks for the relief it defeated.

*Parts of claims.* In August, the Court denied Community Brigade's motion to dismiss portions of four of LAEPF's claims "[b]ecause none of CB's arguments for dismissal dispose of any of LAEPF's claims in their entirety." Dkt. 40 at 5; *see* Dkt. 42 (adopting tentative ruling). "This Court does not typically 'dismiss' theories, or parts of claims in connection with a Rule 12(b)(6) motion." Dkt. 40 at 5 (quoting *Alcon Ent., LLC v. Tesla, Inc.*, No. 24-cv-09033-GW-(RAOx), 2025 U.S. Dist. LEXIS 66291, *30 (2025); *see also Franklin v. Midwest Recovery Sys., LLC*, No. 8:18-cv-02085-JLS-(DFMx), 2020 WL 3213676, at *1 (C.D. Cal. Mar. 9, 2020) (Rule 12(b)(6) "does not provide a mechanism for dismissing only a portion of a claim") (collecting cases). Arguments of that kind "are better suited for a motion for partial summary judgment." Dkt. 40 at 5.

*Remedies.* In June, the Court declined "to dismiss any claim or portion of any claim on the grounds that LAEPF failed to properly plead its demand for relief," and held that "any dispute over the ultimate availability of restitution or punitive damages is premature at the pleading stage." Dkt. 24 at 18 (tentative ruling, adopted as final); *see Massey v. Banning Unified Sch. Dist.*, 256 F. Supp. 2d 1090, 1092 (C.D. Cal. 2003) (Rule 12(b)(6) motion "will not be granted merely because [a] plaintiff requests a remedy to which he or she is not entitled") (citation omitted); *Rodriguez v. Serv. Emps. Int'l*, 755 F. Supp. 2d 1033, 1053 (N.D. Cal. 2010) (dismissal because remedies sought are unavailable is not appropriate "so long as some relief is available").

The same rules decide this motion. Four of its requests are partial or remedy-based on their face. It asks that the Third, Fifth, Tenth and Eleventh Counterclaims be dismissed only "to the extent" one counterclaimant or the other asserts them (Mot. 7, 10–11). It asks that four individual representations be carved out of the Fourth, leaving the rest of that count standing (Mot. 16–18). It asks that the Third and Fifth be split at

September 2, 2025, so that each counterclaimant keeps one side of the date (Mot. 14, 20). And it asks that specific performance be barred as a remedy on the Third (Mot. 15). None of those four would dispose of a counterclaim, and this Court has already held that a Rule 12(b)(6) motion cannot be used to dismiss part of a claim, Dkt. 40 at 5, or to challenge the remedies sought, Dkt. 24 at 18. They should be denied on that ground alone; the sections that follow answer them, and the balance of the motion, on the merits as well.

The Court has also already addressed when conduct by an entity's leaders can be pleaded against the entity. When Community Brigade argued that LAEPF's allegations described conduct before Community Brigade existed, the Court held the allegations sufficient and ruled that Community Brigade "may renew its arguments if discovery shows that the relevant access-related conduct occurred before CB existed or outside any agency relationship." Dkt. 24 at 11. Counterdefendants' arguments about which counterclaimant dealt with LAEPF, and when, are the same arguments, and they get the same answer.

**B. <u>The Assignment Does Not Defeat Any Counterclaim.</u>**

Counterdefendants read the Assignment as a division of claims between the two counterclaimants and ask the Court to dismiss the Third, Fifth, Tenth and Eleventh Counterclaims as to whichever of them, on their reading, gave the claim away. Mot. 7, 10–11. The premise is that an assignor loses standing to sue on what it conveyed, and that Rule 8(d)(2) does not permit separate parties to decline to say which was injured. Mot. 10. Neither proposition supports dismissal here. Which of two co-parties holds an assigned claim is a question of real party in interest under Rule 17, not Article III standing. California treats joinder of assignor and assignee as the right way to sue on a divided claim, and the Assignment itself authorizes The Brigade to sue jointly and in the alternative with Community Brigade. Rule 8(d) permits precisely the pleading the motion describes. The rest of the argument rests on a reading of the exhibits that the exhibits do not compel. Both holders are already before the Court, and the motion

would dismiss no counterclaim in its entirety.

**1. <u>Which Co-Counterclaimant Holds a Claim Is a Rule 17 Question, Not a Ground for Dismissal.</u>**

Real-party-in-interest status "is very different from standing." *Kent v. N. Cal. Reg'l Office of Am. Friends Serv. Comm.*, 497 F.2d 1325, 1329 (9th Cir. 1974). The temporary loss of an assigned right to sue is "appropriately characterized as a loss of prudential standing" that can be cured, not an Article III defect. *Inventist, Inc. v. Ninebot Inc.*, 664 F. Supp. 3d 1211, 1215–16 (W.D. Wash. 2023). And Rule 17(a)(3) forbids dismissal "until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." *See Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1128–29 (9th Cir. 2017) (district court "abused its discretion by failing to give plaintiffs a reasonable opportunity to substitute the proper party"). Here no one need be joined: both holders are already before the Court.

**2. <u>California Treats Joinder of Assignor and Assignee as the Right Way to Sue.</u>**

"[T]he plaintiff partial assignee may sue by joining the partial assignor," and "the partial assignor may sue upon joinder of the partial assignee." *Cain v. State Farm Mut. Auto. Ins. Co.*, 47 Cal. App. 3d 783, 795 (1975) (citation omitted). *Cain* enforced an assignment that, like this one, transferred some claims and expressly reserved others, with assignor and assignee suing together. *Id.* at 795–96. Joinder "prevented a splitting of causes of action, not caused a splitting." *Phillips v. W. Pac. R.R. Co.*, 22 Cal. App. 3d 441, 445 (1971). The motion's cases state the unremarkable rule that "once the transfer has been made, the assignor lacks standing to sue on the claim." *Johnson v. County of Fresno*, 111 Cal. App. 4th 1087, 1096 (2003); *see Searles Valley Minerals Operations Inc. v. Ralph M. Parsons Serv. Co.*, 191 Cal. App. 4th 1394, 1402 (2011). In each, the assignee sued alone. Neither involved an assignor and assignee suing together, and neither addresses alternative pleading.

The Assignment itself provides the answers. Section 7 provides that "[n]othing in this Section 7 limits The Brigade's assertion, in its own name, of the claims reserved in Section 3, or of any Assigned Right jointly and in the alternative with Community Brigade." FACC Ex. C § 7. The leaders' written consent attached to it says the same: the Association may assert its claims "in its own name and, where the counterclaims so plead, jointly and in the alternative with Community Brigade." FACC Ex. C (Ex. A ¶ 3). Counterdefendants build their chart (Mot. 10–11) on Sections 2, 3 and 8 and never reach Section 7. The instrument they ask the Court to enforce authorizes the pleading they say it forbids.

**3. <u>Rule 8(d) Permits Alternative Pleading, and One Sufficient Alternative Is Enough.</u>**

A party may plead claims "alternatively or hypothetically," and "the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2). At the pleading stage "a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case." *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985); *accord Anderson v. Edward D. Jones & Co.*, 990 F.3d 692, 701 (9th Cir. 2021). Rival claimants may plead ownership in the alternative: "The fact that the outcome of one claim is contingent on the outcome of another does not invalidate the latter." *In re S. Shore Lake Erie Assets & Operations, LLC*, No. 1:21-cv-02343, 2022 WL 1136772, at *4 (N.D. Ohio Apr. 18, 2022). The FACC does exactly what Rule 8(d) allows. FACC ¶¶ 27, 161.

**4. <u>*Sprewell* Does Not Let the Court Construe the Assignment Against the Pleader.</u>**

*Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), permits a court to disregard allegations that an exhibit contradicts. The contradiction "must be virtually inescapable." *Est. of Prasad ex rel. Prasad v. Cnty. of Sutter*, 958 F. Supp. 2d 1101, 1111 (E.D. Cal. 2013) (citation omitted). Even then, "contradiction does not render an entire complaint deficient"; only the contradicted allegations fall. *BMG Rts.*

*Mgmt. (US) LLC v. Joyy Inc.*, 716 F. Supp. 3d 835, 843–44 (C.D. Cal. 2024). And when contract language is "reasonably susceptible to more than one interpretation," its interpretation "presents a fact issue that cannot be resolved on a motion to dismiss." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1008–09 (9th Cir. 2014). Counterdefendants' chart (Mot. 10–11) is their reading of Exhibits C and D, not the exhibits themselves. Section 8 of Exhibit C, for example, on which the motion relies for the board-seat representation (Mot. 16), defines what The Brigade did not convey. It does not say The Brigade lacks the claim, and The Brigade, which reserved its fraud claims (Ex. C § 3(d)), sues in its own name.

**5. <u>The Cited District Court Orders On Standing Do Not Support the Motion.</u>**

Counterdefendants' only authority that separate parties may not plead in the alternative is two recent district court orders.[1] Neither addresses assignment, the real party in interest, or alternative pleading. The Rule 17 and Rule 8(d) authorities above control.

**6. <u>The Board-Seat Representation Was Made to The Brigade.</u>**

The FACC alleges that each representation was made to Mr. Gibbs, Mr. Hauptman, Mr. Pierson or Mr. Miller in his capacity as a leader of The Brigade and in connection with its program, and that The Brigade relied and was injured. FACC ¶¶ 149, 153. The Brigade could hear a promise only through its leaders, and California law allows even a corporation formed afterward to sue on misrepresentations made to the people who formed it. *See Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 606 (1995) (describing case in which "defendants who made misrepresentations to officers of a corporation could be sued by a corporation subsequently formed by the same

---

[1] Counterdefendants cite *Flores v. Macerich Stonewood, LLC*, "2026 U.S. Dist. LEXIS 146408 (C.D. Cal. June 29, 2026)," and *Wells Fargo Bank, N.A. v. Kiwijet, Inc.*, "2026 U.S. Dist. LEXIS 258694 (C.D. Cal. Nov. 9, 2026)." Mot. 10, 13–14. Counterclaimants could not locate either LEXIS citation. The orders appear at 2026 WL 2001216 (C.D. Cal. June 25, 2026) and 2026 WL 3416050 (C.D. Cal. Nov. 9, 2026). *Flores* declined supplemental jurisdiction over state-law claims, and *Kiwijet* rejected an Article III challenge.

individuals even though it did not exist at the time of the fraud”). That the board-seat promise was made in connection with Mr. Gibbs’s Statement of Work (FACC ¶ 55) does not make it his alone. Whether it was made to him personally or to The Brigade through him is a question of fact, not a ground for dismissal.

## C. The Third Counterclaim States a Claim for Breach of Contract.

Counterdefendants attack the Third Counterclaim on four grounds: that the FACC cannot decide whether the Back-Office Arrangement was formed in 2023 or in 2025, and so pleads no definite terms (Mot. 11–13); that the 2025 dealings were at best an unenforceable agreement to agree (Mot. 13–14); that neither counterclaimant holds the claim it asserts (Mot. 14); and that specific performance is unavailable (Mot. 15). Formation and the parties’ intent are questions of fact, Rule 8(d) permits pleading in the alternative, and the authorities the motion relies on were decided on evidentiary records rather than on the pleadings.

### 1. A Contract May Be Implied From Conduct, and Whether One Was Formed Is a Fact Question.

“The existence and terms of an implied contract are manifested by conduct.” *Retired Emps. Ass’n of Orange Cnty., Inc. v. County of Orange*, 52 Cal. 4th 1171, 1178 (2011) (citing Cal. Civ. Code § 1621). Whether the parties’ conduct supplies the foundation for an implied contract must be determined “as a question of fact.” *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 677 (1988) (citation omitted). Whether there was an agreement, and on what terms, “is more appropriately decided on a motion for summary judgment or by the trier of fact, and not on a motion to dismiss.” *Voyager Indem. Ins. Co. v. Goldsmith*, 733 F. Supp. 3d 905, 919 (C.D. Cal. 2024). And “[a]n oral contract may be pleaded generally as to its effect, because it is rarely possible to allege the exact words.” *Khoury v. Maly’s of Cal., Inc.*, 14 Cal. App. 4th 612, 615 (1993). The FACC pleads the terms (FACC ¶¶ 7, 137), the party who agreed and his authority (¶ 133), the April 2025 written framework and the detailed December 11, 2025 terms (¶¶ 79–81, 88, 135), the parties’ performance (¶¶ 49, 73), and breach (¶

141). That is a contract claim.

**2. The 2023 and 2025 Allegations Describe One Continuing Arrangement.**

The FACC alleges an arrangement formed in 2023, performed for two years, and reaffirmed and refined in 2025. FACC ¶¶ 7, 49, 79–81, 88, 134. A pleading that describes the evolution of a relationship is not internally inconsistent, and a party may in any event "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *see Molsbergen*, 757 F.2d at 1019.

**3. An Open Fee Term Does Not Defeat a Performed Contract.**

When a contract does not fix the consideration, "the consideration must be so much money as the object of the contract is reasonably worth." Cal. Civ. Code § 1611. "The absence of price provisions does not render an otherwise valid contract void." *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 482 (1955). And "subsequent, satisfactory performance under the contract by the parties and their interpretation of that document have cured any defect" of indefiniteness. *Cal. Sch. Emps. Ass'n v. Sunnyvale Elementary Sch. Dist.*, 36 Cal. App. 3d 46, 71 (1973). The fee here was not open in any event: the FACC pleads a fee of ten to fifteen percent of the amounts processed. FACC ¶¶ 7, 80, 137.

**4. Counterdefendants' Authorities Were Decided on Evidentiary Records.**

*Ladas v. Cal. State Auto. Ass'n*, 19 Cal. App. 4th 761 (1993), was decided on a motion in limine after a full three-day evidentiary hearing at which witnesses were called and evidence was submitted, and only after the defendant had already obtained an order partially adjudicating issues in its favor. *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199 (2006), *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309 (9th Cir. 1996), and *Netbula, LLC v. Bindview Dev. Corp.*, 516 F. Supp. 2d 1137 (N.D. Cal. 2007), were decided on summary judgment. None dismissed a contract claim on the pleadings. And *Bustamante* distinguished a case in which "the subsequent acts of the

parties as they worked out the details provided sufficient certainty to determine the existence of a breach and a remedy." 141 Cal. App. 4th at 213. That is the case pleaded here. FACC ¶¶ 79–81, 88–89.

**5. Specific Performance Is a Remedy, and *Ellison* Affirmed It.**

A request for a particular remedy is not a claim and is not subject to dismissal under Rule 12(b)(6). *Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 942 (S.D. Cal. 2022). This Court has already so held in this case. *See* Part IV.A. The FACC also pleads damages in the alternative. FACC ¶ 144. And *Ellison v. Ventura Port Dist.*, 80 Cal. App. 3d 574 (1978), affirmed a judgment of specific performance, explaining that the continuing-supervision doctrine "is an archaic one and should not be unduly extended." *Id.* at 581. The relief sought here, moving identified funds to a separate account and transferring vehicle titles, requires no ongoing supervision. FACC ¶¶ 141, 143.

**D. The Fourth Counterclaim Pleads Promissory Fraud With Particularity.**

Counterdefendants challenge the Fourth Counterclaim representation by representation: the sponsorship representations for want of particularity (Mot. 16); the board-seat representation for want of a counterclaimant who holds it (Mot. 16–17); the accounting representations for want of a false statement or reliance (Mot. 17); the vehicle-funding representation on the ground that nonperformance alone cannot show intent (Mot. 17–18); the December 11, 2025 agreement for want of reliance by Community Brigade (Mot. 18); and the claims against Ms. Pond for want of a duty to disclose (Mot. 19). The FACC pleads the speaker, the listener, the content and, for most representations, the date. What remains is a dispute about what the evidence will show.

**1. The FACC Pleads Who, What, When and to Whom.**

Rule 9(b) requires "the who, what, when, where, and how" of the misconduct charged. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). It does not require "a precise time frame": the Ninth Circuit has held

allegations of conduct "[b]etween and during about 2005 and about 2007" sufficient. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180–81 (9th Cir. 2016) (citation omitted). This Court found Rule 9(b) satisfied where LAEPF's own pleading anchored its alleged scheme "to dates beginning in late 2025." Dkt. 24 at 16. And the requirement is relaxed when "the circumstances of the alleged fraud are peculiarly within the defendant's knowledge." *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1281–82 (C.D. Cal. 2022) (citation omitted). Here the speakers, recipients and content are pleaded, and most representations are dated: the board-seat promise (July 2024), the vehicle-funding agreement (December 23, 2024), the accounting representations (February 4–19, 2025), and the December 11, 2025 agreement. FACC ¶¶ 51–62, 154. Ms. Pond's December 13, 2023 email corroborates the sponsorship representations; it is not alleged to be false. *Id.* ¶ 52. Nor must the pleader identify "false statements made by each and every defendant." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (emphasis omitted). As this Court held on Community Brigade's motion, Ninth Circuit "precedent does not prohibit collective pleading so long as the complaint gives defendants fair notice of the claims against them," the requirement to identify each defendant's acts "may be relaxed as to matters within the opposing party's knowledge," and "[a] corporation is a legal entity that may act only through its agents, including officers, directors, and employees." Dkt. 24 at 7 (citations omitted). The Court found six defendants a "small, cohesive group." *Id.* Counterdefendants are three: LAEPF, its Chairman and Chief Executive Officer, and its Executive Administrator.

### 2. Intent Not to Perform Is Pleaded With the Circumstances *Tenzer* Identifies.

Intent may be alleged generally. Fed. R. Civ. P. 9(b). Under California law it may be inferred from the promisor's "hasty repudiation of the promise, his failure even to attempt performance, or his continued assurances after it was clear he would not perform." *Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30–31 (1985). The FACC pleads each. LAEPF received the vehicle funds and allocated none of them; it took title to the

vehicles and withholds them from the program, which is not performance of a promise that The Brigade would have possession and control. FACC ¶¶ 56, 59, 118, 153. Mr. Woodworth repudiated the December 2025 agreement within days and never took it to his board. *Id.* ¶¶ 90, 155. And through 2025 LAEPF repeated its assurances while implementing none of them, all the while maintaining for the Fire Department the segregated-account, percentage-fee arrangement it would not give The Brigade. *Id.* ¶¶ 53, 64, 156.

**3. <u>Forbearance Is Reliance.</u>**

A misrepresentation is actionable when it induces forbearance, that is, when it induces a person "not to take action." *Small v. Fritz Cos.*, 30 Cal. 4th 167, 174 (2003); *Beckwith v. Dahl*, 205 Cal. App. 4th 1039, 1063 (2012). The Brigade continued to raise money through LAEPF rather than an entity of its own, let LAEPF take title to the vehicles, and refrained from establishing separate accounts. FACC ¶ 153. Community Brigade refrained from activating independent financial administration and left the designated funds and titles with LAEPF. *Id.* ¶ 157. "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.*, 157 Cal. App. 4th 835, 865 (2007) (citation omitted). Exhibit C's statement that The Brigade dealt with LAEPF through 2025 does not contradict Community Brigade's reliance on a representation made after it existed, at a meeting its representatives attended. FACC ¶ 154.

**4. <u>Ms. Pond Had a Duty to Speak.</u>**

A duty to disclose arises where the defendant has exclusive knowledge of material facts, actively conceals them, or makes partial representations while suppressing others, so long as some transactional relationship exists between the parties. *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336–37 (1997); *Rattagan v. Uber Techs., Inc.*, 17 Cal. 5th 1, 40–41 (2024). That relationship arises "from direct dealings between the plaintiff and the defendant." *Bigler-Engler v. Breg, Inc.*, 7 Cal. App. 5th

276, 312 (2017). That is what the FACC pleads. Ms. Pond administered the program's donation records, wrote to The Brigade's leaders about how its accounts would be set up, received their requests to account, and received Mr. Miller's email identifying LAEPF's supposed accountant, knowing it was wrong. FACC ¶¶ 52, 62, 151. Corporate status does not shield her from liability for her own tortious conduct. *PMC, Inc. v. Kadisha*, 78 Cal. App. 4th 1368, 1379–80 (2000).

**5. A Fraud Claim May Proceed Alongside the Contract Claim.**

A promissory-fraud claim "does not depend upon whether the defendant's promise is ultimately enforceable as a contract." *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996). And a fraud claim "based on conduct committed during the course of a contractual relationship falls outside the economic loss doctrine." *Rattagan*, 17 Cal. 5th at 44.

**E. The Fifth Counterclaim States a Claim for Breach of Fiduciary Duty.**

Counterdefendants argue that no fiduciary duty runs to Counterclaimants: that a charity's duty on accepting restricted gifts is owed to the charitable purpose and enforceable only by the Attorney General and the narrow class named in Corporations Code section 5142 (Mot. 21); that a back-office services arrangement is not fiduciary by default (Mot. 21); and that Mr. Woodworth and Ms. Pond held nothing personally (Mot. 20). The FACC pleads an undertaking rather than a status, section 5142 is not the exclusive route to enforcement, and an officer answers for the torts he personally commits.

**1. One Who Holds Money for Another's Specific Purpose Is a Fiduciary.**

A fiduciary is one who must "either knowingly undertake to act on behalf and for the benefit of another, or must enter into a relationship which imposes that undertaking as a matter of law." *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 386 (2008). *City of Hope* held that an arm's-length royalty contract with a duty to account does not by itself create that undertaking. *Id.* at 388–89. *Wolf v.*

*Superior Ct.*, 107 Cal. App. 4th 25 (2003), held the same of a right to contingent compensation, which "does not make that party a fiduciary in the absence of other indicia of a confidential relationship." *Id.* at 27. LAEPF did not owe The Brigade a contingent payment; it held The Brigade's donor-designated money and property. An agent owes "a fiduciary duty to act loyally for the principal's benefit in all matters connected with the agency relationship." *Huong Que, Inc. v. Luu*, 150 Cal. App. 4th 400, 411 (2007) (citation omitted). "[O]ne who receives the money of another to invest on that person's behalf becomes a fiduciary." *McMillin v. Eare*, 70 Cal. App. 5th 893, 912 (2021). And one who holds property deposited by another owes that party a fiduciary duty, and if he "disposes of the property of his principal in violation of" the depositor's instructions "he will be responsible for any loss occasioned thereby." *Virtanen v. O'Connell*, 140 Cal. App. 4th 688, 703 (2006) (escrow holder) (citation and internal quotation marks omitted).

The FACC pleads that undertaking at FACC ¶ 162, and LAEPF's own audited financial statements describe it, for this program, as acting "as an agent, trustee, or intermediary rather than as a donee with variance power over these funds." Ex. E at 2. This Court has already recognized that money an agent holds for another is "specific funds held for the benefit of others," as "where an agent receives money on behalf of a principal and refuses to account for it." Dkt. 24 at 14 (citation omitted). That is what the FACC alleges LAEPF did. FACC ¶¶ 111–112, 164. Counterdefendants read the same statement to make the Fire Department the principal (Mot. 21), but it names the Community Brigade program, and whose program that was is a question of fact.

**2. <u>Counterclaimants May Enforce Duties Over the Gifts Given for Their Program.</u>**

The Attorney General has "[t]he primary responsibility" for supervising charitable trusts, Cal. Gov't Code § 12598(a), not the exclusive one. *L.B. Rsch. & Educ. Found. v. UCLA Found.*, 130 Cal. App. 4th 171, 180–81 (2005), recognized, as an alternative ground for its decision, that even where a charitable trust is created, the

Attorney General's power to enforce it is not exclusive. *Holt v. College of Osteopathic Physicians & Surgeons*, 61 Cal. 2d 750 (1964), followed "[t]he prevailing view" that "the Attorney General does not have exclusive power to enforce a charitable trust and that a trustee or other person having a sufficient special interest may also bring an action for this purpose," *id.* at 753, and held that "[p]laintiff trustees therefore have the capacity to bring an action in behalf of [the College] against the majority trustees," *id.* at 757. *Hardman v. Feinstein*, 195 Cal. App. 3d 157, 162 (1987), held only that persons with no interest "other than as taxpayers and members of the public" lack standing. The Corporations Code expressly authorizes suit by "[a] person with a reversionary, contractual, or property interest in the assets subject to such charitable trust." Cal. Corp. Code § 5142(a)(4). Community Brigade pleads that interest, FACC ¶ 170, and gave the Attorney General notice of this action, *id.* ¶ 31; Ex. E. Counterclaimants are not members of the public hoping to benefit from a gift. They are the program for which the gifts were given.

**3. <u>Mr. Woodworth and Ms. Pond Are Liable for Breaches They Committed.</u>**

Corporate directors "are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable." *Frances T. v. Village Green Owners Ass'n*, 42 Cal. 3d 490, 504 (1986). Officer or director status "neither immunizes a person from personal liability for tortious conduct nor subjects him or her to vicarious liability for such acts." *PMC*, 78 Cal. App. 4th at 1379–80 (citation omitted). Mr. Woodworth, LAEPF's Chairman and Chief Executive Officer, made the promises on which the funds were routed to LAEPF; Ms. Pond kept the donation records and received the requests to account. FACC ¶¶ 51, 133, 151, 162–163. The Brigade asserts this count against all three for the period before September 2, 2025; Community Brigade asserts it against LAEPF thereafter. *Id.* ¶¶ 161, 163–164. That allocation is deliberate, not a defect.

**F. <u>The Tenth Counterclaim States a Claim for Interference.</u>**

Counterdefendants argue that the Tenth Counterclaim pleads no protected relationship, no independently wrongful act and no resulting damage, and that the filing of this action is privileged. Mot. 22–24. The relationships are with the donors and the Fire Department, not the completed gifts. The FACC identifies the donors, alleges they demanded that LAEPF transfer their gifts to Community Brigade, and alleges LAEPF refused. FACC ¶¶ 112, 185. It pleads an operating relationship with the Fire Department of more than three years, including through Division 7, and the Department convened the December 11, 2025 meeting. *Id.* ¶¶ 47–48, 88, 185–186. *Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 Cal. 5th 505 (2017), concerned a losing bidder's expectancy in a competitively bid public works contract. "Public works contracts are a unique species of commercial dealings," *id.* at 510, and the Court tied its holding to the public bidding scheme, *id.* at 519–21. It does not govern an existing operating relationship. The independently wrongful acts are the conversion, fiduciary breach and fraud pleaded elsewhere. FACC ¶ 187; *see Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1158–59 (2003). Counterclaimants also do not sue on the filing of this action. The conduct alleged, withholding assets, locking volunteers out of the storage unit, and withholding equipment, is not communicative and is outside Civil Code section 47(b). FACC ¶¶ 91, 158.

Counterdefendants cite *JRS Products, Inc. v. Matsushita Electric Corp. of America*, 115 Cal. App. 4th 168 (2004), for the rule that a contracting party cannot recover in tort for what is in essence a breach of its own contract. Mot. 24. In *JRS* the only wrongful conduct was the termination of a dealer agreement, and the court held that "the essential nature of the conduct determines whether the action sounds in contract or in tort." *Id.* at 182. The wrongful conduct pleaded here is not a breach of the Back-Office Arrangement. Paragraph 187 identifies conversion, breach of charitable trust, breach of fiduciary duty and fraud, each of which exists whether or

not a contract was ever formed. *JRS* also presupposes a contract to breach, and Counterdefendants argue at length that none was formed. Mot. 11–14. They cannot have it both ways. *JRS* was itself decided on a full record: the Court of Appeal reversed the jury's verdict on the tort claim, reversed the pretrial dismissal of the contract claim, and remanded that claim for further proceedings. *Id.* at 173, 184.

### G. The Eleventh Counterclaim States a UCL Claim.

Counterdefendants make three arguments against the Eleventh Counterclaim: that it is derivative and falls with its predicates, that UCL liability cannot be vicarious, and that restitution is unavailable against a defendant who obtained nothing. Mot. 25. Their chart would also dismiss the count as to Community Brigade. Mot. 10–11; see Part IV.B.

The predicate counts survive here, so the UCL count survives with them. This Court applied that rule to LAEPF's own derivative UCL claim, Dkt. 24 at 16, and "decline[d] to dismiss LAEPF's UCL claim only in part, where it adequately rests on other grounds." Dkt. 40 at 6.

On personal participation, the authority cited by Counterdefendants is *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002), and a later court has described the language *Emery* quoted as "at best dicta." *People v. Adir Int'l, LLC*, 114 Cal. App. 5th 275, 310 (2025). The FACC pleads what each individual did in any event. FACC ¶¶ 55–62, 151, 154–155.

On restitution, the availability of a particular remedy against a particular defendant is not a test of whether a claim is stated, and the FACC also seeks injunctive relief. *Id.* ¶ 193; see Part IV.A; *Tucker v. Pac. Bell Mobile Servs.*, 208 Cal. App. 4th 201, 230–31 (2012) (reversing dismissal of UCL claims to the extent they sought injunctive relief).

### H. If Any Count Is Dismissed, Leave to Amend Should Be Granted.

Counterdefendants ask that leave to amend be denied as futile. Mot. 25. This is the first motion to dismiss the counterclaims. The FACC followed a stipulation, not an

order identifying defects. Dkt. 56–57. LAEPF's First Amended Complaint also followed a stipulation, and when this Court granted Community Brigade's motion against it in part, it did so with leave to amend. Dkt. 24 at 18. Counterclaimants ask for the same treatment. A Rule 9(b) dismissal of curable claims is without prejudice. *Swartz*, 476 F.3d at 765. And to the extent the Court concludes any claim belongs to the other counterclaimant, Rule 17(a)(3) requires a reasonable time to ratify or substitute rather than dismissal.

## V. CONCLUSION

The Brigade built this program, and its donors paid for it. Counterclaimants have pleaded how LAEPF came to hold those assets, what it promised, and what it did instead. Much of the motion would not dispose of a counterclaim at all, and this Court does not dismiss parts of claims. The motion should be denied in its entirety. In the alternative, Counterclaimants request leave to amend and a reasonable time under Rule 17(a)(3).

DATED: November 25, 2026 WOLF WALLENSTEIN, PC

By: */s/ Ellen Kaufman Wolf*
Ellen Kaufman Wolf
Christopher J. Cummiskey
Evan W. Grant

Attorneys for Defendant and Counterclaimant Community Brigade and Counterclaimant The Brigade

## CERTIFICATE OF COMPLIANCE — L.R. 11-6.2

The undersigned, counsel of record for Counterclaimants Community Brigade and The Brigade, certifies that this brief contains 6,497 words, which complies with the word limit of L.R. 11-6.1.

DATED: November 25, 2026

*<u>/s/ Ellen Kaufman Wolf</u>*
Ellen Kaufman Wolf

# PROOF OF SERVICE

*Los Angeles Emergency Preparedness Foundation dba Community Brigade v. Mikke Pierson, et al.*
Case No. 2:26-cv-02463-GW (DFMx)

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen years and am not a party to the within action. My business address is 11400 West Olympic Boulevard, Suite 700, Los Angeles, California 90064. My electronic mail address is ncarlson@wolfwallenstein.com.

On November 25, 2026, I served the document titled

**COUNTERCLAIMANTS COMMUNITY BRIGADE AND THE BRIGADE'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO COUNTERDEFENDANTS' MOTION TO DISMISS FIRST AMENDED COUNTERCLAIMS (DKT. 63)**

| | |
|---|---|
| ***Attorneys for Plaintiff Los Angeles Emergency Preparedness Foundation dba Community Brigade***<br><br>Ali Parvaneh, Esq.<br>Jacob A. Pace, Esq.<br>MADISON LAW, APC<br>17702 Mitchell North<br>Irvine, California 92614<br>aparvaneh@madisonlawapc.com<br>jpace@madisonlawapc.com | ***Attorneys for Plaintiff Los Angeles Emergency Preparedness Foundation dba Community Brigade***<br><br>Jonathan Pearce<br>Jonathan P. Gutierrez<br>SOCAL IP LAW GROUP LLP<br>310 N. Westlake Blvd., Suite 120,<br>Westlake Village, CA 91362<br>Phone: (805) 230-1356<br>jpearce@socalip.com<br>jgutierrez@socalip.com |

**BY ELECTRONIC MAIL:** I caused the document to be transmitted to the electronic mail addresses set forth above from my electronic mail address, ncarlson@wolfwallenstein.com, pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), each person served having consented in writing to service by electronic mail. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 25, 2026, at Los Angeles, California.

*/s/ Nicole Carlson*
Nicole Carlson